61 Cal.Rptr.3d 200 (2007)
152 Cal.App.4th 125
William WIMSATT et al., Petitioners,
v.
SUPERIOR COURT of California for the County of Los Angeles, Respondent;
Corey Kausch, Real Party in Interest.
No. B196903.
Court of Appeal of California, Second District, Division Three.
June 18, 2007.
*202 Luce, Forward, Hamilton & Scripps and George J. Stephan, Los Angeles, for Petitioners.
Robie & Matthai, James R. Robie and Natalie A. Kouyoumdjian, Los Angeles, for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Petitioners.
Law Office of Ivan K. Stevenson and Ivan K. Stevenson, Rolling Hills Estates, for Southern California Mediation Association and Confidential Mediation & Dispute Resolution as Amici Curiae on behalf of Petitioners.
Baker, Keener & Nahra, Robert C. Baker and R. Jeffrey Neer, Los Angeles, as Amici Curiae on behalf of Petitioners.
No appearance for Respondent.
Rackohn & Rackohn, Craig D. Rackohn, Westlake Village, for Real Party in Interest.
*201 ALDRICH, J.

I.

INTRODUCTION
Plaintiff and real party in interest Corey Kausch (Kausch) filed this legal malpractice case against defendants and petitioners Magana, Cathcart & McCarthy and attorney William H. Wimsatt concerning legal representation rendered in a personal injury lawsuit.[1] Among other allegations, Kausch alleged Magana breached its fiduciary duty by submitting an unauthorized settlement demand to the opposing party. Kausch learned of this potentially unauthorized act from a "confidential mediation brief submitted to a mediator in the personal injury lawsuit.
Magaña seeks a writ of mandate compelling the trial court to vacate its order *203 denying Magaña's application for a protective order and, instead, to enter an order that will protect "mediation-related" communications. Magaña contends that the following items may not be disclosed: (1) all mediation briefs; (2) e-mails sent the day before the mediation that quoted from a mediation brief; and (3) a communication made by Wimsatt to the personal injury defendants purportedly lowering Kausch's settlement demand. (Evid.Code, § 1115 et seq.)
In addressing these evidentiary issues, we examine the mediation confidentiality statutes, Evidence Code section 1115 et. seq., and in particular Evidence Code section 1119. The Supreme Court has held that the mediation statutes are to be broadly construed to effectuate the legislative intent, even if there are conflicting public policies and even if the equities in a particular case suggest a contrary result. In light of the Supreme Court's analysis, stare decisis obligates us to construe the statutes broadly, although in doing so Kausch may be deprived of his ability to prove the purported legal malpractice.
Accordingly, we hold that the first two listed items (the briefs and the e-mails) are protected by mediation confidentiality. However, Magana has not met its burden of proof with regard to the oral communication by Wimsatt. We issue a writ of mandate and direct the trial court to issue a protective order only with respect to the mediation briefs and the e-mails.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. General background.

Kausch was injured in a November 18, 2003, airplane crash. Wimsatt was an attorney in the Magana firm. Kausch hired Magana and also hired attorney Marc Goldstein to represent him in his personal injury lawsuit. The defendants in the personal injury lawsuit were represented by attorney Peter P. Brotzen of Dwyer, Daly, Brotzen & Bruno, LLP, and attorney Robert Baker of Baker Keener & Nahra LLP.
In January 2006, a mediation session was held in an attempt to resolve the case. The mediator was the Honorable R. William Schoettler, retired. The case did not settle.
Around April of 2006, a second mediation session was scheduled for the purpose of trying to settle the personal injury lawsuit.
Brotzen prepared a "confidential mediation brief for the second mediation scheduled for April 28, 2006. Under a section entitled "prior settlement discussions," the brief stated: "`The attorneys for [Kausch] have purportedly recently communicated a settlement demand in the sum of $1.5 million.'"
Early in the morning on April 27, 2006, Goldstein sent an e-mail to Brotzen. Goldstein identified the subject of the e-mail as "mediation." Goldstein stated in part, "I received your mediation brief and read through it last night.... Although it contained a number of statements with which we don't agree, I am particularly concerned about the last statement. Your brief suggests that plaintiffs' lawyers have communicated a $1.5 Million settlement demand. That has not occurred to my knowledge. Where did you get that one? I am unaware of any settlement discussions that have taken place since the last mediation in January."
An hour later, Brotzen responded by email to Goldstein. Brotzen stated: "Two places  second hand from Baker relating what Bill [Wimsatt] said to him [directly] and also Bill [Wimsatt] made that remark during one of our telephone conference *204 calls scheduling the expert depos and touching on whether a second mediation conference] would be worthwhile."
On April 27, 2006, Goldstein also sent an e-mail to Wimsatt. In the e-mail, Goldstein said: "I read in Brotzen's mediation brief that the plaintiffs' lawyers have reduced our settlement demand to $1.5 Million. Did you have any discussion with them regarding numbers? If so, please fill me in."
About five hours later, Wimsatt responded to Goldstein's e-mail. Wimsatt stated by e-mail, "I did have a discussion with him about a month ago. I did not make a demand. I did, however, tell him that I had reevaluated the damages; and, that I thought a demand for half of plaintiffs original demand was more in order. I, also, told him that I had no authority to reduce the original demand."
The second mediation was held on April 28, 2006. Wimsatt, Kausch, Kausch's mother, Goldstein, Brotzen, and Baker attended, along with mediator, the Honorable William Sheffield, retired. The underlying personal injury case was resolved. The appellate record does not disclose the amount of the confidential settlement. At the conclusion of the mediation, Kausch signed a stipulation for settlement. Thereafter, Kausch signed a settlement agreement and mutual release, as well as a statement of accounting, and he endorsed a settlement check.

B. Proceedings in this legal malpractice action before the trial court.

1. The complaint.

In June 2006, Kausch filed a complaint for damages against Magaña. In addition to other allegations, Kausch alleged Magaña breached its fiduciary duty by "lowering [Kausch's] settlement demand by more than one-half, from $3.5 Million to $1.5 Million, which was done without the knowledge, permission or consent of [Kausch]. This was done on the eve of the second mediation and constituted a complete departure and breach of [Magaña's] fiduciary duties ... owed to [Kausch]. Such conduct greatly impaired [Kausch's] ability to achieve his desired results and undermined his position and efforts in the mediation." Kausch further alleged that "[a]s a result of that unauthorized communication, the second mediation concluded at a settlement number much less than [Kausch] could have otherwise received had [Magaña] not reduced [Kausch's] settlement demand by 50% prior to the second mediation." Goldstein was not named as a defendant in the legal malpractice case.

2. Wimsatt's deposition.

Kausch took the deposition of Wimsatt on November 2, 2006. Kausch waived the attorney-client privilege. Wimsatt testified that before the personal injury lawsuit was filed, Kausch made a settlement demand between $3.5 and $5 million. Wimsatt repeatedly denied that he had ever lowered the settlement demand. He objected to all questions relating to the mediations based upon mediation confidentiality. (Evid.Code, § 1115 et seq.)
The following are excerpts from the deposition of Wimsatt taken on November 2, 2006:
(First excerpt)
"Q. Did you make any demands after the lawsuit was filed to the defendants in the case as to what the settlement should be for Corey Kausch?
"[Objection.]
"A. Not alone, no. In other words, the only settlement demand  the only other settlement demand I'm aware of one for *205 the 3.5 million that Corey Kausch authorized in writing at the first mediation."
(Second excerpt)
"Q. Getting back to this meeting that you had, did you, once again, request Mr. Kausch to give you the authority to reduce his demand prior to the second mediation?
"A. I certainly did.
"Q. And did he give it to you?
"A. No.
"Q. And at any time before the second mediation, were you authorized by Corey Kausch to contact the defendants' attorneys and inform them that he was lowering his demand in the case?
"A. No, and I didn't."
"Q. [Wimsatt was shown the confidential mediation brief and in particular the following statement: `"The attorneys for [Kausch] have purportedly recently communicated a settlement demand in the sum of $1.5 million.'"] Did you have any discussions prior to the mediation as to where that information came from?
"A. With?
"Q. Mark Goldstein?
"[Objection.]
"A. There was no demand on behalf of Corey Kausch communicated to the other side by me at any time other than through either Judge Schoetler or through Judge Sheffield who handled the second mediation.
"Q. Does that mediation brief refresh your recollection that you're the one who conveyed a demand to the defendants' attorneys that Corey Kausch was lowering his demand for settlement?
"A. I didn't make such a demand, and I wouldn't without authority from Mr. Kausch."
(Third excerpt)
"Q. [Wimsatt was shown the April 27, 2006, e-mail exchange between Goldstein and Brotzen.] Does that E-mail refresh your recollection that you had a conversation with Bob Baker reducing [Kausch's] demand for settlement in half prior to the second mediation?
"A. No.
"Q. Does that E-mail refresh your recollection that you had a communication with Peter Brotzen reducing [Kausch's] demand prior to the mediation?
"A. I did have a conversation with Peter Brotzen. I specifically said I have no authority to make a demand on behalf of Corey Kausch or to reduce this demand. I simply told him what the evidence I had collected had showed.
"Q. Do you recall Marc Goldstein contacting you prior to the second mediation and that he was quite upset as to where the information came from that plaintiffs demand had been reduced to half?
"A. Well, I would think  sure. He would be upset if, in fact, a demand had been made to reduce the ..."
(Fourth excerpt)
"Q.... It's your position that you did not reduce [Kausch's] settlement demand prior to the second mediation? Is that a correct statement?
"A. That didn't happen.
"Q. Now, when you testified earlier regarding your E-mail to Marc Goldstein in response to his question if you knew anything about the settlement demand being reduced, you referred to a conversation you had a month earlier where you had told the defense attorney that you had reevaluated the case and you thought the demand should be in half, but you didn't have authority to make that demand. [¶] Do you recall that testimony?
*206 "A. I don't recall when that conversation took place so  whether it was a month before or a few days before. But I did have a conversation with Mr. Brotzen that I had new evidence on what the damages were...."

3. Other discovery by Kausch in the malpractice lawsuit.

In November 2006, Kausch sent a letter to Brotzen and Baker (counsel for defendants in the underlying personal injury case) requesting information about the statement made in the confidential mediation brief filed prior to the second mediation. The letter stated in part: "If both of you could be kind enough to state in a letter the name of the attorney representing Corey Kausch who made this demand and when it was made in relationship to the second mediation it will probably allow [us] to forego your depositions regarding this issue."
Kausch's attorney informed counsel for Wimsatt that he intended to depose Brotzen "on the conversation prior to the second mediation [wherein Kausch] had reduced his settlement demand to $1.5 million." Thereafter, it appears Kausch noticed the depositions of Brotzen and Baker.

4. Magaña's request for a protective order.

On December 21, 2006, Magaña sought a protective order to prevent Kausch from obtaining certain discovery. Magaña contended that the mediation confidentiality statutes (Evid.Code, § 1115 et seq.) made confidential the following:
(1) discovery concerning the statements made in any mediation brief prepared on Kausch's behalf for both mediation sessions and discovery concerning the content of any mediation brief prepared by the defendants in the personal injury case, including the "Confidential Mediation Brief;"
(2) discovery concerning the contents of the e-mails; and
(3) discovery seeking to establish that there was a conversation between Wimsatt and Brotzen or Baker "in which Bill Wimsatt allegedly lowered [Kausch's] settlement demand `on the eve of the second mediation' session held on April 28, 2006...."
Further, Magaña sought a protective order to seal the mediation statements of the parties, documents which refer to mediation statements, and statements made at or in connection with the mediation sessions.[2]
Kausch opposed the motion for protective order, stating "During litigation Defendant Wimsatt intentionally breached his fiduciary duty of trust and loyalty by cutting [Kausch's] settlement demand in half from $3,000,000 to $1.5 million without his client's authority. [¶] [Kausch] has noticed the deposition of Peter Brotzen who is a percipient witness to a statement made by Defendant Wimsatt lowering [Kausch's] demand in half. . . . [¶] The mediation privilege does not shield Defendant Wimsatt's statements made prior to the second mediation." Kausch "has no intent to conduct discovery regarding the mediation, only unrelated prior statements to the mediation[.]" (Capitalization omitted.) "The conversations at issue occurred prior to the second mediation regarding [Kausch's] settlement demand being cut in half. Defendant Wimsatt[ ] testified under *207 penalty of perjury he did not make statements attributed to him. Questioning Peter Brotzen on who made the statement, what was said, when was it said, where was it Said, does not `disclose anything said or done or any admission made in the course of the mediation.'"
In reply, Magaña stressed that mediation confidentiality protects not only communications made in the presence of the mediator, "but also communications made `before' the mediation ends, those `materially related' to the mediation, and those `made for the purpose' of mediation or `pursuant to' mediation...."

(a) The first hearing.

At the first hearing held on January 17, 2007, Kausch argued, in part: "It's not the mediation brief that we wish to conduct discovery on. It's a statement that was made unrelated to the mediation that ended up in the mediation brief. [¶] And our position has always been that ... defendant Wimsatt is denying that he ever made this statement prior to mediation. He also testified in his deposition that while having a conversation with Peter Brotzen on another case, this case came up and he expressed an opinion that he had revalued the case and that he thought the value should be cut in half. [¶] Now, that is a statement that was not made towards mediation.... [S]ince this statement was made prior to the mediation, and it wasn't made for the purposes of facilitating mediation, then the privilege doesn't apply." Kausch asserted he wished to prove that Wimsatt had lied in his deposition when he said that he had not lowered Kausch's settlement demand.
The court expressed some concern as to whether the privilege protected perjury. The trial court stayed the proceedings to enable the parties to meet and confer and resolve the issues. The parties were not able to resolve all of their discovery disputes.

(b) The second hearing and the trial court's ruling.

At the second hearing on February 2, 2007, the trial court denied Magana's motion for a protective order. In issuing its ruling, the trial court stated the following: "the [Legislature did not intend confidentiality of mediation proceedings to be so complete as to shield perjury or inconsistent statements." Rather, the court observed that in Foxgate Homeowners' Assn. v. Bramalea California, Inc. (2001) 26 Cal.4th 1, 108 Cal.Rptr.2d 642, 25 P.3d 1117 (Foxgate) the Supreme Court acknowledged there were some situations in which the privilege did not make inadmissible all mediation related information, such as in Rinaker v. Superior Court (1998) 62 Cal.App.4th 155, 74 Cal.Rptr.2d 464 (Rinaker). The trial court noted that Evidence Code section 703.5 precluded mediators from testifying in civil proceedings, except that the statute permitted such testimony relating to conduct that would constitute a crime, and perjury is a crime.
On February 13, 2007, Magaña filed an ex parte application to seal documents. Magaña sought to place under seal all documents submitted by Kausch as they had included unredacted copies of relevant documents. Magaña argued that sealing was necessary because the items were all subject to mediation confidentiality.
On February 22, 2007, the trial court denied the application to seal documents.

C. These writ proceedings.

Magaña filed a petition for writ of mandate requesting an order directing the trial court to vacate its order denying the application for a protective order and, instead, *208 to enter an order that would protect "mediation-related" discovery. We issued an order to show cause and the matter was heard by us at oral argument.[3]

III.

DISCUSSION
The mediation briefs and the April 27, 2006, e-mails are protected by mediation confidentiality. However, Magaña has not shown that the contents of the conversation in which Wimsatt purportedly lowered Kausch's settlement demand are protected by mediation confidentiality.

A. Mediation confidentiality.[4]
Mediation, which can take many forms, is one type of alternative dispute resolution. (Rojas v. Superior Court (2004) 33 Cal.4th 407, 415, 15 Cal.Rptr.3d 643, 93 P.3d 260 (Rojas); Saeta v. Superior Court (2004) 117 Cal.App.4th 261, 269-270, 11 Cal.Rptr.3d 610; see generally, Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2006) ¶ 3:5, p. 3-2 et seq.) The Legislature has determined that litigants should be encouraged to participate in these proceedings as one alternative to "formal court proceedings which it found to be `unnecessarily costly, time-consuming, and complex'. . . ." (Foxgate, supra, 26 Cal.4th at p. 14, 108 Cal.Rptr.2d 642, 25 P.3d 1117.) "The Legislature has expressly declared: `In appropriate cases, mediation provides parties with a simplified and economical procedure for obtaining prompt and equitable resolution of their disputes and a greater opportunity to participate directly in resolving these disputes. Mediation may also assist to reduce the backlog of cases burdening the judicial system. It is in the public interest for mediation to be encouraged and used where appropriate by the courts.' (Code Civ. Proc., § 1775, subd. (c).)" (Rojas, supra, at p. 415, 15 Cal.Rptr.3d 643, 93 P.3d 260.)
"[C]onfidentiality is essential to effective mediation ... and, in some cases required by, the Legislature." (Foxgate, supra, 26 Cal.4th at p. 14, 108 Cal.Rptr.2d 642, 25 P.3d 1117.) "[T]he mediation confidentiality provisions of the Evidence Code were enacted to encourage mediation by permitting the parties to frankly exchange views, without fear that disclosures might be used against them in later proceedings. [Citations.]" (Fair v. Bakhtiari (2006) 40 Cal.4th 189, 194, 51 Cal.Rptr.3d 871, 147 P.3d 653.)
Mediation confidentiality is codified in Evidence Code section 1115 et seq. This evidentiary restriction is not limited to those communications made "in the course of mediation. [Citation.]" (Rojas, supra, 33 Cal.4th at p. 417, 15 Cal.Rptr.3d 643, 93 P.3d 260.) Rather, as delineated in Evidence Code section 1119, the restriction *209 applies to any written or oral communication made "for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation," as well as all "communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation...." (§ 1119.) Section 1119 also makes such evidence not subject to discovery.
Evidence Code section 1119 provides: "Except as otherwise provided in this chapter:
"(a) No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.
"(b) No writing ... that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.
"(c) All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential."
Some mediation communications and writings are admissible, if the statutory requirements are met. For example, the statutory scheme specifies when written settlements and oral settlements resulting from the mediation process are admissible. (Evid.Code, §§ 1118, 1122, 1123, 1124.) Additionally, communications or writings otherwise protected may be disclosed if there is consent for disclosure, according to the parameters of section 1122.
Subject to a limitation not relevant here, mediators are expressly prohibited from testifying in civil proceedings about mediations over which they presided, except as to conduct that would give rise to civil or criminal contempt, constitute a crime, be the subject of investigation by the State Bar or Commission on Judicial performance, or give rise to disqualification proceedings. (Evid.Code, § 703.5.)[5]
Evidence Code section 1121 also places restrictions on the use of a mediator's reports, assessments, evaluations, recommendations, or findings by the mediator. These items may not be submitted to a court or other adjudicative body absent consent of the parties to the mediation, or unless disclosure is mandated by court rules or other laws.[6]
*210 Even after mediation ends, communications and writings protected by the statutes are to remain confidential. (Evid. Code, § 1126; cf. Evid.Code, § 1128 [reference to mediation in subsequent trial is grounds for new trial].)[7]
The Supreme Court has repeatedly resisted attempts to narrow the scope of mediation confidentiality. The court has refused to judicially create exceptions to the statutory scheme, even in situations where justice seems to call for a different result. Rather, the Supreme Court has broadly applied the mediation confidentiality statutes and has severely curtailed courts' ability to formulate exceptions. The court has stated that "[t]o carry out the purpose of encouraging mediation by ensuring confidentiality, the statutory scheme ... unqualifiedly bars disclosure of communications [and writings] made during mediation absent an express statutory exception." (Foxgate, supra, 26 Cal.4th at p. 15, 108 Cal.Rptr.2d 642, 25 P.3d 1117, fn. omitted; accord, Rojas, supra, 33 Cal.4th at p. 416, 15 Cal.Rptr.3d 643, 93 P.3d 260; Fair v. Bakhtiari, supra, 40 Cal.4th at p. 194, 51 Cal.Rptr.3d 871, 147 P.3d 653.)
In Foxgate, supra, 26 Cal.4th 1, 108 Cal.Rptr.2d 642, 25 P.3d 1117, a mediator's report indicated the attorney for one party had engaged in a pattern of tactics that were in bad faith and intended solely to delay. The report and the declarations of the opposing counsel were submitted in support of a motion for sanctions. (Id. at pp. 5-7,108 Cal.Rptr.2d 642, 25 P.3d 1117.) By crafting a nonstatutory exception to mediation confidentiality, the court of appeal held that the report was admissible. The court of appeal reasoned that disclosure was necessary because the Legislature did not intend to statutorily mandate confidentiality to shield parties who obstructed the mediation process. (Id. at p. 9,108 Cal.Rptr.2d 642, 25 P.3d 1117.) The Supreme Court disagreed. It held that the motion and the trial court's consideration of the motion and attached documents violated the Evidence Code. (Id. at p. 17, 108 Cal.Rptr.2d 642, 25 P.3d 1117.) Foxgate reasoned that the mediation confidentiality statutes "are clear. [Evidence Code] section 1119 prohibits any person, mediator and participants alike, from revealing any written or oral communication made during mediation." (Foxgate, supra, at p. 13, 108 Cal.Rptr.2d 642, 25 P.3d 1117.)
Foxgate recognized its conclusion left unpunished sanctionable conduct  conduct that obstructed the mediation process  and in effect, undermined the entire purpose of mediation. However, Foxgate deferred to the Legislature to balance competing public policies and to create exceptions to the statutory scheme. Foxgate stated: "The mediator and the Court of Appeal here were troubled by what they perceived to be a failure of [the defendant] to participate in good faith in the mediation process. Nonetheless, the Legislature has weighed and balanced the policy that promotes effective mediation by requiring confidentiality against a policy that might better *211 encourage good faith participation in the process. Whether a mediator in addition to participants should be allowed to report conduct during mediation that the mediator believes is taken in bad faith and therefore might be sanctionable under Code of Civil Procedure section 128.5, subdivision (a), is a policy question to be resolved by the Legislature.' Although a party may report obstructive conduct to the court, none of the confidentiality statutes currently make an exception for reporting bad faith conduct or for imposition of sanctions under that section when doing so would require disclosure of communications or a mediator's assessment of a party's conduct although the Legislature presumably is aware that Code of Civil Procedure section 128.5 permits imposition of sanctions when similar conduct occurs during trial proceedings." (Foxgate, supra, 26 Cal.4th at p. 17, 108 Cal.Rptr.2d 642, 25 P.3d 1117, fn. omitted.) "The Legislature has decided that the policy of encouraging mediation by ensuring confidentiality is promoted by avoiding the threat that frank expression of viewpoints by the parties during mediation may subject a participant to a motion for imposition of sanctions by another party or the mediator who might assert that those views constitute a bad faith failure to participate in mediation. Therefore, even were the court free to ignore the plain language of the confidentiality statutes, there is no justification for doing so here." (Ibid.)
Foxgate also recognized that there were additional public policies that the Legislature had balanced: "The conflict between the policy of preserving confidentiality of mediation in order to encourage resolution of disputes and the interest of the state in enforcing professional responsibility to protect the integrity of the judiciary and to protect the public against incompetent and/or unscrupulous attorneys has not gone unrecognized. (See Kentra, Hear No Evil, See No Evil, Speak No Evil: The Intolerable Conflict for Attorney-Mediators Between the Duty to Maintain Mediation Confidentiality and the Duty to Report Fellow Attorney Misconduct (1997) BYU L.Rev. 715; Irvine, Serving Two Masters: The Obligation under the Rules of Professional Conduct to Report Attorney Misconduct in, a Confidential Mediation (1994) 26 Rutgers L.J. 155.) As noted, however, any resolution of the competing policies is a matter for legislative, not judicial, action." (Foxgate, supra, 26 Cal.4th at p. 17, fn. 13, 108 Cal. Rptr.2d 642, 25 P.3d 1117.)
The Supreme Court again broadly interpreted mediation confidentiality in Rojas, supra, 33 Cal.4th 407, 15 Cal.Rptr.3d 643, 93 P.3d 260 to preclude exceptions other than those expressly contained in the statutes. In Rojas, contractors and subcontractors settled a construction defect case brought by the owner of an apartment complex in which it was alleged "that water leakage due to construction defects had produced toxic molds and other microbes on the property...." (Id. at p. 411, 15 Cal.Rptr.3d 643, 93 P.3d 260.) A settlement was reached during mediation. (Id. at p. 412, 15 Cal.Rptr.3d 643, 93 P.3d 260.) Thereafter, several hundred tenants of the apartment complex sued many of the entities who had been involved in the development and construction of the complex, as well as the complex's owner. Among other allegations, the tenants alleged numerous health problems associated with construction defects. (Ibid.) The tenants served deposition subpoenas and demanded production of a number of items prepared during the prior litigation including, the "entire files" relating to the construction defect case, witness statements, test samples, physical evidence removed from *212 the building, analyses of raw data, videotapes, and photographs. (Id. at pp. 412-413,15 Cal.Rptr.3d 643, 93 P.3d 260.)
Rojas acknowledged that the trial court expressed concern that, without the requested discovery, the tenants might not have been able to obtain much of the necessary evidence. (Rojas, supra, 33 Cal.4th at p. 414, 15 Cal.Rptr.3d 643, 93 P.3d 260.) However, Rojas held that the mediation confidentiality statutes are not subject to a "`good cause' exception." (Id. at p. 423,15 Cal.Rptr.3d 643, 93 P.3d 260.) Rojas concluded that the requested items were not discoverable because they were "`prepared for the purpose of, in the course of, or pursuant to, [the] mediation'" in the underlying construction action. (Id. at pp. 416-417, 423, 15 Cal.Rptr.3d 643, 93 P.3d 260.) In reaching this conclusion, Rojas focused on the strong public policy favoring mediation and the need for confidentiality in the mediation process. (Id. at pp. 415-416, 15 Cal.Rptr.3d 643, 93 P.3d 260.)
As Rojas explained, the Legislature intended a broad and expansive confidentiality rule: "Before [Evidence Code] section 1119's passage, former section 1152.5 governed mediation confidentiality. [When 1119 was enacted, the Legislature substantially followed the recommendation of the Law Revision Commission to provide broad protection in section 1119, subdivision (b)] to all types of writings, including photographs. [¶] At the same time, the Legislature also sought to expand protection for oral communications. Whereas subdivision (a)(2) of former section 1152.5 protected documents `prepared for the purpose of, or in the course of, or pursuant to, the mediation,' subdivision (a)(1) protected only those oral communications and admissions `made ... in the course of the mediation.' (Stats.1996, ch. 174, § 1.) The Commission's recommendation explained that, under these provisions, the protection for documents was `broader* than the protection for oral communications and admissions, and `[t]o encourage frankness in discussions relating to mediation, the Commission propose[d] ... eliminat[ing] this distinction [by] protect[ing] "evidence of anything said or of any admission made for the purpose of, or in the course of, or pursuant to," the mediation.' (Recommendation on Mediation Confidentiality [(Jan.1997)] 26 Cal. Law Revision Com. Rep. [(1996)] p. 428.) Again, the Legislature followed suit by protecting, in subdivision (a) of section 1119, `evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation.' The Commission's official comment explains that this section `extends [protection] to oral communications made for the purpose of or pursuant to a mediation, not just oral communications made in the course of the mediation.' (Cal. Law Revision Com. com., 29B pt. 3 West's Ann. Evid.Code [(2004 supp.)] foll. § 1119 at p. 149.)" (Rojas, supra, 33 Cal.4th at pp. 421-422, 15 Cal.Rptr.3d 643, 93 P.3d 260.)[8]
The courts of appeal also strictly construe the mediation confidentiality statutes, even when the equities in the case suggest contrary results.
In Eisendrath, supra, 109 Cal.App.4th 351, 134 Cal.Rptr.2d 716, a former husband moved to correct a spousal support agreement negotiated in mediation. (Id. at p. 355, 134 Cal.Rptr.2d 716.) Noting that at the time he negotiated and executed the agreement, he had not been represented *213 by counsel, the former husband argued many of the conversations that occurred before the agreement was signed would demonstrate it did not accurately reflect the parties' understanding. Eisendrath held the discussions which purportedly were inconsistent with the finalized mediated agreement were inadmissible. (Id. at pp. 363-365, 134 Cal.Rptr.2d 716.) Eisendrath concluded that, in contrast to the privileges found in Evidence Code section 910 et. seq. (e.g., the attorney-client privilege (§ 950)), mediation confidentiality cannot be impliedly waived. (Eisendrath, supra, at p. 362, 134 Cal.Rptr.2d 716.) The Legislature mandated this result, even if it gave great power to the spouse who refused to expressly waive mediation confidentiality. (Id. at p. 365, 134 Cal.Rptr.2d 716.) Eisendrath stated: "In explaining that the Legislature had balanced conflicting policies in enacting this scheme, the Foxgate court recognized that the scheme effectively gives control over evidence of some sanctionable misconduct to the party engaged in the misconduct. On this matter, the court in Foxgate remarked that `none of the confidentiality statutes currently make an exception for reporting bad faith conduct....' (Foxgate, supra, 26 Cal.4th at p. 17, 108 Cal.Rptr.2d 642, 25 P.3d 1117.) Following the Foxgate court, we assume that the Legislature considered these limitations on the presentation of evidence when it enacted the statutory scheme." (Eisendrath, supra, at p. 365, 134 Cal.Rptr.2d 716.)
In Doe 1 v. Superior Court (2005) 132 Cal.App.4th 1160, 34 Cal.Rptr.3d 248 (Doe 1), 26 Catholic priests were successful in stopping the Los Angeles Archdiocese from disclosing written summaries of personnel records of priests who were accused of sexually molesting minors. (Id. at p. 1163, 34 Cal.Rptr.3d 248.) The summaries were confidential because they had been prepared for the mediation of 500 cases alleging child sexual molestation. (Ibid.)
There have been only two cases that have deviated from a broad application of the mediation confidentiality statutes. Both of these cases were referred to in Foxgate, supra, 26 Cal.4th at pages 15 to 17, 108 Cal.Rptr.2d 642, 25 P.3d 1117, and both have been narrowly construed to apply to their unique facts. One is relevant to the case before us because the trial court relied upon it.[9]
In Rinaker, supra, 62 Cal.App.4th 155, 74 Cal.Rptr.2d 464, two minors were accused of vandalizing a car. (Id. at pp. 161-162, 74 Cal.Rptr.2d 464.) The victim's civil harassment action was resolved in mediation. (Ibid.) Thereafter, the two minors were charged in a delinquency proceeding (Welf. & Inst.Code, § 602) with vandalism in violation of Penal Code section 594. (Rinaker, supra, at pp. 161-162, 74 Cal. Rptr.2d 464.) In the delinquency case, the minors sought to compel the civil mediator to testify that in the mediation the victim admitted he had not seen who had committed the vandalism. (Id. at p. 162, 74 Cal. Rptr.2d 464.) The mediator objected, arguing that statements made during mediation were to remain confidential pursuant to Evidence Code section 1119. (Rinaker, supra, at p. 163, 74 Cal.Rptr.2d 464.) Rinaker *214 noted that section 1119 is applicable in civil and noncriminal; proceedings, and that a juvenile delinquency proceeding was considered to be "civil." (Rinaker, supra, at p. 164, 74 Cal.Rptr.2d 464.) However, mediation confidentiality had to give way to the constitutional rights of the minors. (Id. at p. 165, 74 Cal.Rptr.2d 464.) Rinaker concluded, "section 1119 does not bar the minors from calling [the mediator] to appear at their juvenile delinquency proceeding and testify concerning statements made by [the victim] during confidential mediation if those statements are inconsistent with [the victim's] testimony in the juvenile delinquency proceeding." (Rinaker, supra, at p. 167, 74 Cal.Rptr.2d 464.)
When Foxgate, supra, 26 Cal.4th 1, 108 Cal.Rptr.2d 642, 25 P.3d 1117 held there could be no judicially created exceptions, it acknowledged Rinaker, supra, 62 Cal. App.4th 155, 74 Cal.Rptr.2d 464. But, Foxgate restricted Rinaker to its facts. Foxgate stated, "Rinaker is consistent with our past recognition and that of the United States Supreme Court that due process entitles juveniles to some of the basic constitutional rights accorded adults, including the right to confrontation and cross-examination. [Citations.]" (Foxgate, supra, at p. 16, 108 Cal.Rptr.2d 642, 25 P.3d 1117.)
Although the statutory scheme is broadly applied, it does not protect items admissible or subject to discovery merely because they were introduced in mediation. (Rojas, supra, 33 Cal.4th at p. 417, 15 Cal.Rptr.3d 643, 93 P.3d 260.) Evidence Code section 1120, subdivision (a) states: "Evidence otherwise admissible or subject to discovery outside of a mediation or a mediation consultation shall not be or become inadmissible or protected from disclosure solely by reason of its introduction or use in a mediation or a mediation consultation." Thus, for example, if a witness observed a car accident and the witness's statement prepared for a mediation was used by one party to support his or her position in mediation, the witness would not be precluded from testifying in a subsequent trial, even if the witness' statement was protected from disclosure. (Rojas, supra, at pp. 417 & 423, fn. 8, 15 Cal.Rptr.3d 643, 93 P.3d 260.)
The Supreme Court has addressed the interplay between Evidence Code section 1119 and section 1120 as follows: "Read together, sections 1119 and 1120 establish that a writing  which qualifies as `"[e]vidence"' (§ 140)  is not protected `solely by reason of its introduction or use in a mediation' (§ 1120, subd. (a)), but is protected only if it was `prepared for the purpose of, in the course of, or pursuant to, a mediation.' (§ 1119, subd. (b).) In other words, under section 1120, a party cannot secure protection for a writing  including a photograph, a witness statement, or an analysis of a test sample  that was not `prepared for the purpose of, in the course of, or pursuant to, a mediation' (§ 1119, subd. (b)) simply by using or introducing it in a mediation or even including it as part of a writing  such as a brief or a declaration or a consultant's report  that was `prepared for the purpose of, in the course of, or pursuant to, a mediation.' [Citation.] [T]his construction does not render section 1120 `surplusage' or permit parties `to use mediation as a shield to hide evidence.' Rather, consistent with the Legislature's intent, it applies section 1120 as a `limit[]' on `the scope of [s]ection 1119' that `prevent[s] parties from using a mediation as a pretext to shield materials from disclosure.'" (Rojas, supra, 33 Cal.4th at p. 417, 15 Cal.Rptr.3d 643, 93 P.3d 260, fn. omitted.)[10]
*215 Thus, if parties use facts in mediation, mediation confidentiality does not necessarily preclude disclosure of those facts. As Rojas stated: "Of course, that witness statements `prepared for the purpose of, in the course of, or pursuant to, a mediation' are protected from discovery under [Evidence Code] section 1119 does not mean that the facts set forth in those statements are so protected. Under section 1120, subdivision (a), because facts known to percipient witnesses constitute `[e]vidence otherwise admissible or subject to discovery outside of a mediation,' those facts do not `become inadmissible or protected from disclosure solely by reason of [their] introduction or use in a mediation' through witness statements prepared for the purpose of, in the course of, or pursuant to, the mediation." (Rojas, supra, 33 Cal.4th at p. 423, fn. 8, 15 Cal.Rptr.3d 643, 93 P.3d 260.)
We now turn to the facts before us.

B. Discussion.

Here, Magaña sought to preclude discovery of three categories of items: (1) statements made in all mediation briefs, including statements in the "confidential mediation brief;" (2) the contents of the April 27, 2006, e-mails; and (3) a conversation between Wimsatt and Brotzen or Baker "in which Bill Wimsatt allegedly lowered plaintiff's settlement demand `on the eve of the second mediation' held on April 28, 2006. . . ." We analyze each category separately.

1. The mediation briefs are protected from disclosure.

Mediation briefs epitomize the types of writings which the mediation confidentiality statutes have been designed to protect from disclosure. Mediation briefs are part and parcel of the mediation negotiation process. Typically, they provide a global view of the dispute and focus the positions of the parties. (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution, supra, ¶ 3:163, p. 3-35.) Mediation briefs outline "the procedural posture of the case, disputed and undisputed facts, applicable law, itemized damages, and the settlement picture." (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution, supra, ¶ 4:227, p. 4-65, see also ¶ 3:163, p. 3-35; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2006) ¶¶ 13:11.34 to 13:11.34a, pp. 13-7 to 13-8.) Documents may be attached to the briefs. (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution, supra, ¶ 4:227.1, p. 4-65.) Mediation briefs are designed to facilitate an open and frank dialogue with the hope that the case can be resolved in the mediation. When written, the authors expect the briefs will always be kept confidential and used only in mediation by the mediator and the parties. Thus, mediation briefs are an integral part of the mediation process and are "prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation," and are to remain confidential. (Evid. Code, § 1119, subd. (b).)
The trial court should have issued a protective order with regard to the mediation briefs produced on behalf of Kausch and the personal injury defendants, including the confidential mediation brief written for the second mediation. This would include an order prohibiting questioning or soliciting information in a deposition or by written discovery as to the contents of the mediation briefs.

*216 2. The April 27, 2006, e-mails are protected from disclosure.

The April 27, 2006, e-mails were written the day before the second mediation. They quoted from, and referenced, the confidential mediation brief. The purpose of the e-mails was to clarify statements made in the mediation briefs as such statements would significantly affect the mediation negotiation to be held the next day. The e-mails would not have existed had the mediation briefs not been written. They were materially related to the mediation that was to be held the next day and are to remain confidential. (Cf. Eisendrath, supra, 109 Cal.App.4th at p. 364, 134 Cal.Rptr.2d 716.) To conclude otherwise would permit mediation participants to extract excerpts from a mediation brief and avoid confidentiality by publishing the contents of the brief in another medium. Thus, the e-mails are protected and not subject to discovery.
The fact that the e-mail communications were transmitted by electronic means does not alter our conclusion. An e-mail is considered a writing for purposes of mediation confidentiality. (Rojas, supra, 33 Cal.4th at p. 421, 15 Cal.Rptr.3d 643, 93 P.3d 260; Evid.Code, § 1119 [incorporating the definition of writing in Evidence Code section 250]; Evid.Code, § 250 [writing includes recording transmitted by electronic mail]; Cal. Law Revision Com. com., 29B pt. 3 West's Ann. Evid. Code, supra, foil. § 1119 at p. 221 [subd. (b) of Evid.Code, § 1119 "expressly encompasses any type of `writing' as defined in Section 250, regardless of whether the representations are on paper or on some other medium"].)
Accordingly, the e-mails were "made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation" and are not subject to disclosure. The trial court should have issued a protective order with regard to the April 27, 2006, e-mails. This would include an order prohibiting questioning or soliciting information in a deposition or by written discovery as to the content of the e-mails.

3. Magaña failed to meet its burden to prove that the statements made by Wimsatt purportedly lowering Kausch's settlement demand were protected.

Lastly, Kausch sought to gather information through discovery about statements Wimsatt made in which he purportedly lowered Kausch's settlement demand. While the protective order only referred to a conversation that might have occurred on the "eve" of the mediation, as had been alleged in the complaint, the parties have not limited the discussion to that time frame. Other information suggests the statements may have been made a month or a few days before the mediation, during a telephone call to schedule depositions, or, as stated in argument by Kausch's attorney, when Wimsatt was talking about another case. It is also unclear if there was a single conversation between Wimsatt and Brotzen or if there was a second conversation between Wimsatt and Baker.[11] The contents of the conversation is also disputed, as Wimsatt insists that he never breached his fiduciary duties and never lowered Kausch's demand.[12] Further, the *217 parties agree that there is additional information about the purported conversation contained in the deposition of Wimsatt that was not presented to the trial court and thus has not been considered by us.[13]
What is clear is that Magaña, as the moving party, has the burden to show that the conversation is protected by mediation confidentiality. To do so, the timing, context, and content of the communication all must be considered. Mediation confidentiality protects communications and writings if they are materially related to, and foster, the mediation. (Cf. Eisendrath, supra, 109 Cal.App.4th at p. 364, 134 Cal.Rptr.2d 716; Doe 1, supra, 132 Cal.App.4th at p. 1167, fn. 6, 34 Cal. Rptr.3d 248.) Mediation confidentiality is to be applied where the writing, or statement would not have existed but for a mediation communication, negotiation, or settlement discussion. (Cf. Rojas, supra, 33 Cal.4th at p. 417, fn. 5, 15 Cal.Rptr.3d 643, 93 P.3d 260.)
Magaña has not brought forth any evidence to demonstrate that the conversation is linked to the second mediation or that it is anything other than expected negotiation posturing that occurs in most civil litigation. Throughout litigation, parties discuss discovery, settlement ranges, and developing evidence, including witnesses and documents. It is not unusual for parties to change positions as new information is developed. Parties re-value liability and damages. They alter their negotiation strategy. All conversations between the parties are not protected by mediation confidentiality simply because the conversations might have occurred temporally before a scheduled mediation.
Here, there was an unsuccessful mediation in January 2006. The case did not settle. Eventually, a second mediation was scheduled for April 28, 2006, before a different mediator. The fact that the conversation in which Wimsatt allegedly lowered Kausch's settlement demand occurred outside the presence of the mediator does not automatically foreclose a conclusion that it was protected by mediation confidentiality. (Eisendrath, supra, 109 Cal. App.4th at p. 364, 134 Cal.Rptr.2d 716; Doe 1, supra, 132 Cal.App.4th at p. 1167, fn. 6, 34 Cal.Rptr.3d 248.) However, it is Magaña's burden to link the conversation to a mediation session. It has not done so. Magaña has not shown that the purported conversation was made for the purpose of, or pursuant to, the mediation. Rather, there is evidence that it was made during a telephone call "scheduling the expert depos and touching on whether a second mediation conference] would be worthwhile." This evidence suggests the conversation occurred during a "discovery" conversation. Thus, the conversation may have occurred, and the statement could have been made, even if there was to be no mediation. If so, the statements were communications, negotiations, and settlements made in the regular course of the litigation, not for the purpose of, in the course of, or pursuant to a mediation. Magaña failed to bring forth facts to show that this conversation was anything other than a routine discussion, unassociated with mediation that routinely occurs in civil litigation. As such, Magaña failed to meet its burden of proof.
We note, however, that the contents of any purported conversation are not automatically confidential simply because they are referred to in the protected confidential mediation brief and the protected emails. Pursuant to Evidence Code section *218 1120, subdivision (a), because facts exist that constitute otherwise admissible evidence or are subject to discovery outside of a mediation, those facts do not "become inadmissible or protected from disclosure solely by reason of [their] introduction or use in a mediation" through such protected documents as mediation briefs or protected e-mails. Facts otherwise admissible cannot be shielded from disclosure simply because they have been placed in confidential documents. (Rojas, supra, 33 Cal.4th at p. 423, fn. 8, 15 Cal.Rptr.3d 643, 93 P.3d 260.)
Thus, Magaña has not shown that the conversation in which Wimsatt purportedly lowered Kausch's settlement demand is protected by mediation confidentiality.

4. The trial court could not craft exceptions.

The trial court created an exception to mediation confidentiality by ruling that "the [L]egislature did not intend confidentiality of mediation proceedings to be so complete as to shield perjury or inconsistent statements." This ruling was based upon Kausch's argument that Wimsatt's deposition testimony was perjurious because it was inconsistent with, and contrary to, other statements made by him.
We appreciate the trial court's desire to avoid the strict limitations of mediation confidentiality in this case. Preventing Kausch from accessing mediation-related communications may mean he must forgo his legal malpractice lawsuit against his own attorneys. However, the Supreme Court has declared that exceptions to mediation confidentiality must be expressly stated in the statutes. (Foxgate, supra, 26 Cal.4th at p. 15, 108 Cal.Rptr.2d 642, 25 P.3d 1117; Rojas, supra, 33 Cal.4th at p. 416, 15 Cal.Rptr.3d 643, 93 P.3d 260; Fair v. Bakhtiari, supra, 40 Cal.4th at p. 194, 51 Cal.Rptr.3d 871, 147 P.3d 653.) Further, cases have shielded evidence of sanctionable conduct (Foxgate, supra, 26 Cal.4th 1, 108 Cal.Rptr.2d 642, 25 P.3d 1117), criminal conduct (Doe 1, supra, 132 Cal.App.4th 1160, 34 Cal.Rptr.3d 248), and statements that purportedly were inconsistent with those made in a mediation (Eisendrath, supra, 109 Cal.App.4th at p. 351, 134 Cal.Rptr.2d 716). Cases have rejected a good cause exception (Rojas, supra, at pp. 423-24, 15 Cal.Rptr.3d 643, 93 P.3d 260), refused to find implied waivers to mediation confidentiality (Eisendrath, supra, at pp. 362-363, 134 Cal.Rptr.2d 716), and acknowledged that in doing so, the mediation participants accused of misconduct might be protected. Even though in each of these cases strong reasons existed to permit the introduction of the evidence, the results were dictated by the comprehensive statutory scheme devised by the Legislature.
In concluding that an exception was warranted so as not to shield perjury and inconsistent statements, the trial court relied upon Rinaker, supra, 62 Cal.App.4th 155, 74 Cal.Rptr.2d 464. However, in Rinaker the information sought to be introduced was in delinquency proceedings where the minors were being charged with criminal activity. In Rinaker, the information to be elicited (admissions made by the victim) could have exonerated the minors. To deny the minors access to the information would have denied them their constitutionally protected rights. In contrast, the proceedings before us involve a civil legal malpractice action where money damages are sought. The present case is no different from the thousands of civil cases routinely resolved through mediation.[14]
Our Supreme Court has clearly and unequivocably stated that we may not craft *219 exceptions to mediation confidentiality. (Foxgate, supra, 26 Cal.4th at p. 15, 108 Cal.Rptr.2d 642, 25 P.3d 1117.) The Court has also stated that if an exception is to be made for legal misconduct, it is for the Legislature to do, and not the courts. (Id. at p. 17, fn. 13, 108 Cal.Rptr.2d 642, 25 P.3d 1117.) We are bound to follow this precedent (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937), even if we might have concluded that other public policies warrant an approach to confidentiality that is not absolute. Thus, the trial court erred in creating an exception to mediation confidentiality.
The stringent result we reach here means that when clients, such as Kausch, participate in mediation they are, in effect, relinquishing all claims for new and independent torts arising from mediation, including legal malpractice causes of action against their own counsel. Certainly clients, who have a fiduciary relationship with their lawyers, do not understand that this result is a by-product of an agreement to mediate. We believe that the purpose of mediation is not enhanced by such a result because wrongs will go unpunished and the administration of justice is not served.[15]
The inequities of California's mediation statutes have not gone unnoticed. Peter Robinson, the Associate Director of the Straus Institute for Dispute Resolution and Assistant Professor of Law at Pepper-dine University School of Law, has gathered a number of cases across the country in which courts have been asked to enforce or avoid mediated agreements. He suggests strict confidentiality (such as codified in Evidence Code section 1115 et seq.) results in absurd enforcement, when contrasted with another approach to the enforcement *220 of mediated settlements. The nonexhaustive list of cases includes situations raising arguments about whether a mediated agreement was reached, whether there was fraud, duress or mistake, and whether the agreement violated public policy. The situations include cases where a party was lied to by her own attorney, the mediator, and a third party; a scrivener's error in a mediated settlement lead to a $600,000 windfall to one party; parties claimed their own attorney coerced them into signing a settlement agreement; a mother waived parental rights; and the parties agreed to perform an illegal act in the mediated agreement. (Robinson, Centuries of Contract Common Law Can't Be All Wrong: Why the UMA's Exception to Mediation Confidentiality in Enforcement Proceedings Should be Embraced and Broadened, 2003 J.Disp. Res. 135.)
As Professor Robinson notes, a strict approach to mediation confidentiality often prevents courts from "exploring and justly deciding controversies that might arise out of mediated agreements." (Robinson, Centuries of Contract Common Law Can't Be All Wrong: Why the UMA's Exception to Mediation Confidentiality in Enforcement Proceedings Should be Embraced and Broadened, supra, 2003 J.Disp. Res. at p. 138, fn. omitted.) The California cases we discussed above are illustrative. They have allowed to go unpunished sanctionable conduct that frustrated the purpose of mediation (Foxgate, supra, 26 Cal.4th 1, 108 Cal.Rptr.2d 642, 25 P.3d 1117), foreclosed litigants from gathering evidence that might prove toxic molds and other microbes created health hazards (Rojas, supra, 33 Cal.4th 407, 15 Cal. Rptr.3d 643, 93 P.3d 260), precluded a propria persona litigant from proving the terms of a mediated agreement (Eisendrath, supra, 109 Cal.App.4th 351, 134 Cal. Rptr.2d 716), and shielded from view evidence of criminal conduct (Doe 1, supra, 132 Cal.App.4th 1160, 34 Cal.Rptr.3d 248).
Given the number of cases in which the fair and equitable administration of justice has been thwarted, perhaps it is time for the Legislature to reconsider California's broad and expansive mediation confidentiality statutes and to craft ones that would permit countervailing public policies be considered.
In light of the harsh and inequitable results of the mediation confidentiality statutes (Evid.Code, § 1115 et seq.), such as those set out above, the parties and their attorneys should be warned of the unintended consequences of agreeing to mediate a dispute. If they do not intend to be bound by the mediation confidentiality statutes, then they should "make [it] clear at the outset that something other than a mediation is intended." (Doe 1, supra, 132 Cal.App.4th at p. 1166, 34 Cal. Rptr.3d 248.)

DISPOSITION
Let a writ of mandate issue directing the trial court to enter a new and different order granting the motion of petitioners Magaña, Cathcart & McCarthy and attorney William H. Wimsatt for a protective order prohibiting the disclosure of the mediation briefs and the e-mails, only. A protective order is not to be granted with regard to the conversation in which Wimsatt purportedly lowered Kausch's settlement demand.
We deny the request of Magaña, Cathcart & McCarthy and attorney William H. Wimsatt to seal the documents and we deny the request to redact the documents.
The parties are to bear their own costs in this proceeding.
We concur: KLEIN, P.J., and CROSKEY, J.
NOTES
[1] For ease of reference, we refer to the law firm of Magaña, Catchcart & McCarthy and attorney William H. Wimsatt collectively as Magaña. When necessary, we also refer to Wimsatt individually.
[2] Magana's request for a protective order also sought to exclude other items. The parties subsequently reached a consensus on these items. We have detailed only those items remaining in dispute.
[3] We granted permission to file amicus curiae briefs to Robert C. Baker of Baker, Keener & Nahra, LLC, Association of Southern California Defense Counsel, and Southern California Mediation Association and the Law Office of Ivan K. Stevenson.
[4] "Practitioners and the courts sometimes refer to the confidentiality afforded by [Evidence Code section 1115 et. seq.] to communications made in connection with mediation as a `mediation privilege.' [Citations.]" (Stewart v. Preston Pipeline Inc. (2005) 134 Cal.App.4th 1565, 1572, fn. 5, 36 Cal.Rptr.3d 901.) However, because the mediation confidentiality rules are not "privileges" in the traditional sense (Eisendrath v. Superior Court (2003) 109 Cal.App.4th 351, 362-363, 134 Cal.Rptr.2d 716 (Eisendrath) [discussing some differences between statutory privileges and Evidence Code section 1115 et seq.]), and because the Evidence Code does not use the phrase "privilege," we will use the term "mediation confidentiality." (See, Stewart v. Preston Pipeline Inc., supra, at p. 1572, fn. 5, 36 Cal.Rptr.3d 901.)
[5] Evidence Code section 703.5 reads:

"No person presiding at any judicial or quasi-judicial proceeding, arid no arbitrator or mediator, shall be competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding, except as to a statement or conduct that could (a) give rise to civil or criminal contempt, (b) constitute a crime, (c) be the subject of investigation by the State Bar or Commission on Judicial Performance, or (d) give rise to disqualification proceedings under paragraph (1) or (6) of subdivision (a) of Section 170.1 of the Code of Civil Procedure. However, this section does not apply to a mediator with regard to any mediation under Chapter 11 (commencing with Section 3160) of Part 2 of Division 8 of the Family Code."
[6] Evidence Code section 1121 reads:

"Neither a mediator nor anyone else may submit to a court or other adjudicative body, and a court or other adjudicative body may not consider, any report, assessment, evaluation, recommendation, or finding of any kind by the mediator concerning a mediation conducted by the mediator, other than a report that is mandated by court rule or other law and that states only whether an agreement was reached, unless all parties to the mediation expressly agree otherwise in writing, or orally in accordance with Section 1118."
[7] Evidence Code section 1126 reads: "Anything said, any admission made, or any writing that is inadmissible, protected from disclosure, and confidential under this chapter before a mediation ends, shall remain inadmissible, protected from disclosure, and confidential to the same extent after the mediation ends."
[8] Rojas, supra, 33 Cal.4th 407, 15 Cal.Rptr.3d 643, 93 P.3d 260 held that the actual physical samples collected at the apartment complex were not writings as defined in Evidence Code section 250, and thus, were not protected. (Id. at p. 416, 15 Cal.Rptr.3d 643, 93 P.3d 260.)
[9] The second case is Olam v. Congress Mortg. Co. (N.D.Cal.1999) 68 F.Supp.2d 1110 (Olam). In Olam, the plaintiff contended an agreement reached in mediation was not enforceable because she "was incapable (intellectually, emotionally, and physically) of giving legally viable consent." (Id. at p. 1118.) In subsequent proceedings, the plaintiff waived confidentiality and the defendant expressly agreed to a limited waiver of confidentiality covering the key facts to be addressed. (Id. at pp. 1118-1119, 1129, 1130, fn. 25.) The testimony of the mediator was found to be essential to doing justice and was admissible. (Id. at p. 1139.)
[10] Evidence Code section 140 reads: "`Evidence' means testimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact."
[11] For simplicity, we hereinafter assume that there was only one conversation and it was between Wimsatt and Brotzen.
[12] Magaña suggests that the trial court made a factual finding that the conversation was made for the purpose of, in the course of, or pursuant to, the mediation, but that an exception applied. This is a misreading of the trial court's order. Having found that an exception applied, the trial court did not make findings with regard to whether the statement was protected.
[13] We have denied a motion to augment the record to include an additional excerpt from Wimsatt's deposition because this excerpt was not before the trial court.
[14] The trial court in the matter before us also referred to Evidence Code section 703.5. As discussed above, section 703.5 precludes mediators from testifying in civil proceedings about mediations over which they presided unless the conduct discussed would give rise to civil or criminal contempt, constitute a crime, be subject to investigation by the State Bar or Commission on Judicial performance, give rise to disqualification proceedings, or was made in Family Code mediations commencing with Family Code section 3160. (See fn. 5.) The trial court noted that Foxgate, supra, 26 Cal.4th 1, 108 Cal.Rptr.2d 642, 25 P.3d 1117 had referenced section 703.5 and that perjury is a crime. However, when Foxgate cited to section 703.5, it did so to explain that the Legislature had formulated a statutory scheme that was comprehensive and contained few exceptions. (Foxgate, supra, at p. 15, 108 Cal.Rptr.2d 642, 25 P.3d 1117 ["To carry out the purpose of encouraging mediation by ensuring confidentiality, the statutory scheme, which includes sections 703.5, 1119, and 1121, unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception. (Fn.omitted.)"].) Foxgate did not cite Evidence Code section 703.5 to suggest that courts could formulate exceptions to the statutory scheme.
[15] In at least one jurisdiction that has less stringent mediation statutes than those in California, courts addressing situations akin to the present case have permitted the disclosure of confidential communications made during the course of a mediation. In Avary v. Bank of America, N.A. (Tex.Ct.App.2002) 72 S.W.3d 779, discovery was permitted when beneficiaries alleged breach of fiduciary duty by an executor in rejecting a higher settlement demand in mediation. Avary reasoned that the alleged breach of fiduciary duty was a new and independent tort, separate and apart from the subject of the mediation. Further, despite the public policy to protect confidentiality, there was an equally important policy to preserve significant and well-established procedural and substantive rights. In Alford v. Bryant (Tex.Ct.App.2004) 137 S.W.3d 916, a client sued his attorney for malpractice in connection with settlement reached in mediation. Alford concluded that the testimony of the mediator was admissible over the client's objection because the client waived confidentiality, the information was likely outcome determinative, and the mediator's testimony was critical evidence.