179 Cal.App.4th 152 (2009)
MICHAEL CASSEL, Petitioner,
v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
WASSERMAN, COMDEN, CASSELMAN & PEARSON, L.L.P., et al., Real Parties in Interest.
No. B215215.
Court of Appeals of California, Second District, Division Seven.
November 12, 2009.
*155 Makarem & Associates, Ronald W. Makarem, Peter M. Kunstler and Jamie R. Greene for Petitioner.
No appearance for Respondent.
Haight Brown & Bonesteel, Peter Q. Ezzell, Nancy E. Lucas and Stephen M. Caine for Real Parties in Interest.

OPINION
JACKSON, J.

INTRODUCTION
Petitioner Michael Cassel seeks writ relief from two orders excluding evidence in favor of real parties in interest Wasserman, Comden, Casselman & Pearson, L.L.P., David B. Casselman and Steve K. Wasserman. We grant the petition to vacate the orders with directions.

FACTUAL AND PROCEDURAL BACKGROUND
In 2005, petitioner Michael Cassel (Cassel) filed a legal malpractice action against his former attorneys, real parties in interest Wasserman, Comden, Casselman & Pearson, L.L.P., David B. Casselman (Casselman) and Steve K. Wasserman (collectively Wasserman Comden). Wasserman Comden represented Cassel in a lawsuit regarding ownership interest in Von Dutch Originals, LLC, a famous clothing company, and a license to use the Von Dutch name (Von Dutch lawsuit).[1] Cassel and Wasserman Comden met with each other on August 2, 3 and 4, 2004, with respect to the Von Dutch lawsuit. Cassel (directly and through Wasserman Comden) and the opposing party (directly and through his counsel) participated in a mediation on August 4 as a result of which Cassel and the opposing party entered into a $1.25 million settlement agreement. Cassel subsequently brought the legal malpractice action, alleging that Wasserman Comden forced him to sign the settlement agreement for $1.25 million, rather than the higher amount he had told Wasserman Comden was acceptable.
In preparation for trial in the legal malpractice action, Wasserman Comden brought a motion in limine seeking to exclude evidence proffered by Cassel *156 regarding certain conversations and conduct between Cassel and Wasserman Comden on August 2, 3, and 4, 2004, during meetings in which they were the sole participants and which were held outside the presence of the opposing party and the mediator. Wasserman Comden claimed that the communications were protected from disclosure by the mediation confidentiality statutes in Evidence Code section 1115 et seq.[2] Cassel argued that they were confidential communications between client and his attorneys which were subject to the law of the lawyer-client privilege in section 950 et seq. and that mediation confidentiality did not apply. The trial court and the parties acknowledged that they found no California judicial opinion dealing with communications solely between a client and his attorneys, outside the presence of the opposing party or the mediator, near or at the time a mediation was scheduled.
The trial court found that the communications were protected by mediation confidentiality and, accordingly, issued orders on April 1 and April 2, 2009, excluding them as evidence on the grounds they were inadmissible.[3] The court and parties discussed referring the issue to the Court of Appeal by petition for writ of mandate. At Cassel's request, on April 3, 2009, the trial court issued an order under Code of Civil Procedure section 166.1 finding that its orders excluding communications between Cassel and Wasserman Comden, based on mediation confidentiality, involve a controlling question of law for which there are substantial grounds for difference of opinion and appellate resolution of the issues could materially advance the termination of the legal malpractice action. The court nevertheless set the trial to begin on August 13, 2009. Cassel included the order in his petition for writ of mandate and stay of proceedings filed April 8, 2009, with respect to the court's orders excluding the communications from evidence.
Cassel requests that we issue a peremptory writ of mandate directing the respondent superior court to vacate its orders of April 1 and April 2, 2009, *157 and to issue a new order denying Wasserman Comden's motion in limine to exclude the evidence and that we award him his costs on this petition.[4]
We issued an order to show cause on April 23, 2009, as to why the court should not be compelled to vacate its orders of April 1 and April 2, 2009, granting Wasserman Comden's in limine motion to exclude evidence and to issue a new and different order denying the motion.

DISCUSSION
The question presented is whether, as a matter of law, mediation confidentiality requires exclusion of conversations and conduct solely between a client, Cassel, and his attorneys, Wasserman Comden, on August 2, 3, and 4, 2004, during meetings in which they were the sole participants and which were held outside the presence of any opposing party or mediator. The parties present arguments as if there was a mutually exclusive dichotomyeither, according to Cassel, the lawyer-client privilege statutory scheme applies (§ 950 et seq.) or, according to Wasserman Comden, the mediation confidentiality statutes apply (§ 1115 et seq.).
In our view, resolution of the issue requires consideration of both statutory schemes. The parties apparently agree as to the initial step, application of the lawyer-client privilege statutory scheme. They do not dispute that, absent the filing of the instant malpractice action, the lawyer-client privilege statutory scheme (§ 950 et seq.) would apply to the disclosures sought by Cassel in his capacity as the client. (See § 954.)[5] Nor do they apparently dispute that a statutory exception (§ 958)[6] eliminates the disclosure protections otherwise provided by the privilege when either the lawyer or, as in this case, the client files suit against the other for breach of duties arising out of the lawyer-client relationship. Accordingly, admission of the communications would not be precluded by the lawyer-client privilege. The inquiry must continue, however, *158 to determine whether any other limitations imposed by law preclude disclosure of all or a portion of the content of the communications.
(1) Mediation confidentiality comes into play as a possible limitation.[7] Mediation confidentiality statutes include recognition that other statutes govern disclosure of particular kinds of information. Section 1120, subdivision (a), provides: "Evidence otherwise admissible or subject to discovery outside of a mediation or a mediation consultation shall not be or become inadmissible or protected from disclosure solely by reason of its introduction or use in a mediation or a mediation consultation."[8]
Section 1119[9] limits the admissibility of communications during the mediation process. In subdivisions (a) and (b), section 1119 precludes admission or other disclosure of oral and written communications made "for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation." It provides in subdivision (c) that "[a]ll communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential." Wasserman Comden claims that as a party's attorney, it qualifies as a "participant" in the mediation process and, therefore, any communication made by Wasserman Comden as the attorney, regardless of the identity of the other communicant, is protected from disclosure. As we explain more fully below, we disagree.
(2) In the instant case, the communicants are a client and his attorneys, the communications are outside the presence of, and not otherwise communicated to, any opposing party (or its attorney) or the mediator, and reveal nothing said or done in the mediation discussion. By definition, mediation is *159 a process facilitated by a mediator between disputing parties, not between a client and his attorney. Section 1115[10] provides the following definition: "For purposes of this chapter: [¶] (a) `Mediation' means a process in which a neutral person or persons facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement." (Italics added.)
For mediation purposes, a client and his attorney operate as a single participant. Subdivision (b) of section 1775.1 of the Code of Civil Procedure provides: "Unless otherwise specified in this title or ordered by the court, any act to be performed by a party may also be performed by his or her counsel of record." This is consistent with the common understanding that "party" as used in numerous procedural statutes, means "not only the actual litigant, but also the litigant's attorney of record." (Levy v. Superior Court (1995) 10 Cal.4th 578, 583 [41 Cal.Rptr.2d 878, 896 P.2d 171].)
(3) Legislative intent and policy behind mediation confidentiality are to facilitate communication by a party that otherwise the party would not provide, given the potential for another party to the mediation to use the information against the revealing party; they are not to facilitate communication between a party and his own attorney. "The legislative intent underlying the mediation confidentiality provisions of the Evidence Code is clear. The . . . purpose of confidentiality is to promote `a candid and informal exchange regarding events in the past . . . . This frank exchange is achieved only if the participants know that what is said in the mediation will not be used to their detriment through later court proceedings and other adjudicatory processes.' (Nat. Conf. of Comrs. on U. State Laws, U. Mediation Act (May 2001) § 2, Reporter's working notes, ¶ 1; see also Note, Protecting Confidentiality in Mediation (1984) 98 Harv. L.Rev. 441, 445. [`Mediation demands . . . that the parties feel free to be frank not only with the mediator but also with each other. . . . Agreement may be impossible if the mediator cannot overcome the parties' wariness about confiding in each other during these sessions.'].) [¶] . . . [C]onfidentiality is essential to effective mediation. . . ." (Foxgate Homeowners' Assn. v. Bramalea California, Inc. (2001) 26 Cal.4th 1, 14 [108 Cal.Rptr.2d 642, 25 P.3d 1117], italics added; accord, Rojas v. Superior Court (2004) 33 Cal.4th 407, 415-416 [15 Cal.Rptr.3d 643, 93 P.3d 260].)
*160 Wasserman Comden relies on Wimsatt v. Superior Court, supra, 152 Cal.App.4th 137 as support for its argument that mediation confidentiality statutes apply broadly to conversations solely between a party and his attorney. The admissibility issues before the Wimsatt court were in a context similar to the circumstances in the instant case. In a legal malpractice action, the client alleged that his attorneys breached their fiduciary duty by lowering the dollar amount of the client's settlement demand without the client's knowledge or consent on the eve of a mediation. (Id. at p. 144.) The communications at issue referred to a purported $1.5 million settlement demand made by the plaintiff's attorney to at least one of the defendant's attorneys, in three formsstatements in mediation briefs, e-mails recounting portions of the briefs' statements, and a telephone conversation. (Id. at pp. 147, 158.) The purported demand occurred after the close of the first mediation between the parties and shortly before the second mediation between them. (Id. at p. 147.) The trial court denied the attorney's motion for a protective order to seal all the communications on the basis of mediation confidentiality. (Id. at p. 148.) The attorney sought a writ mandating the trial court to vacate its denial and issue the protective order. (Id. at p. 149.)
Wasserman Comden points to the statement of the Wimsatt court that "[t]he stringent result we reach here means that when clients . . . participate in mediation they are, in effect, relinquishing all claims for new and independent torts arising from mediation, including legal malpractice causes of action against their own counsel. Certainly clients, who have a fiduciary relationship with their lawyers, do not understand that this result is a by-product of an agreement to mediate." (Wimsatt v. Superior Court, supra, 152 Cal.App.4th at p. 163.) That statement is not, however, the court's holding and, therefore, does not operate as authority for such a broad unqualified rule. The court had previously indicated that its holding was not an unqualified bar to disclosure of all communications by a party's attorney. Specifically, the court had stated that "[p]reventing [the party/client] from accessing mediation-related communications may mean he must forgo his legal malpractice lawsuit against his own attorneys." (Id. at p. 162, italics added.)
Further, the Wimsatt court did not reach the same decision as to all three forms of communication. The court held that, pursuant to section 1119, the disclosures of statements appearing in mediation briefs and e-mails that contained the statements were protected and not subject to discovery. (Wimsatt v. Superior Court, supra, 152 Cal.App.4th at pp. 158-159.) The court required little analysis to reach its conclusion. The court stated that "[m]ediation briefs epitomize the types of writings which the mediation confidentiality statutes have been designed to protect from disclosure." (Id. at p. 158.) They are, the court continued, "an integral part of the mediation process and are `prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation,' and are to remain confidential." *161 (Id. at pp. 158-159.) The court directed the trial court to issue a protective order prohibiting disclosure of the statements from the briefs and the e-mails. (Id. at p. 165.)
(4) The court did not, however, reach the same conclusion with respect to a telephone conversation that "might have occurred on the `eve'" of the second mediation and in which the plaintiff's attorney purportedly made the demand to at least one of the defendant's attorneys. (Wimsatt v. Superior Court, supra, 152 Cal.App.4th at p. 160). In dealing with the attorney-to-opposing-attorney communication, the Wimsatt court provided guidelines for analyzing communications not clearly a part of the protected mediation process. The court noted that the exact number and content of conversations and which of the defendant's attorneys was involved were unclear, but "[w]hat is clear is that . . . the moving party . . . has the burden to show that the conversation is protected by mediation confidentiality. To do so, the timing, context, and content of the communication all must be considered. Mediation confidentiality protects communications and writings if they are materially related to, and foster, the mediation. [Citations.] Mediation confidentiality is to be applied where the writing or statement would not have existed but for a mediation communication, negotiation, or settlement discussion. [Citation.]" (Ibid.) The court explained that the timing of a conversation in relation to a scheduled mediation session was not determinative of whether the conversation was protected by mediation confidentiality. (Id. at p. 161.) The court concluded that the moving party failed to meet its "burden to link the conversation to a mediation session." (Ibid.) In short, the Wimsatt court determined that evidence of the telephone conversation between the opposing attorneys was not protected from disclosure by mediation confidentiality.
The communications in the instant case are distinguishable from the communications that the Wimsatt court concluded were protected by mediation confidentiality, in that there is no readily identifiable link to the mediation in the communications, such as content of a mediation brief. (Cf. Wimsatt v. Superior Court, supra, 152 Cal.App.4th at pp. 158-159.) Furthermore, any nexus to the mediation is even more tenuous than the one which the Wimsatt court determined was insufficient to bring the settlement demand telephone conversation within the ambit of mediation confidentiality protection. Similarly to the Wimsatt conversation, some of the communications at issue here involved specific dollar figures as to the amount acceptable for settlement. As the Wimsatt conversation, the communications were made very close to the time for a scheduled mediation session at which a settlement figure might have been or was discussed.
As to the telephone conversation, the Wimsatt court observed that there was evidence that it occurred during a telephone call about scheduling *162 experts' depositions and touching on whether a second mediation would be worthwhile. (Wimsatt v. Superior Court, supra, 152 Cal.App.4th at p. 161.) The court explained that the moving party had not demonstrated that the conversation was "anything other than expected negotiation posturing that occurs in most civil litigation. . . . It is not unusual for parties to change positions as new information is developed . . . [and to] revalue liability and damages." (Id. at pp. 160-161.) The court continued that "[t]hus, the conversation may have occurred . . . even if there was to be no mediation." (Id. at p. 161.) In the instant case, there were similar indications that some of the communications were more related to the civil litigation process as a whole rather than to the mediation. For example, according to the record, Casselman expressed in his deposition that, during the course of Wasserman Comden's conference with their client that occurred after the mediation process had begun, he was evaluating the value of the case as he always does when it appears that the case will go to trial. The Wimsatt court's rationale on this point would also support a conclusion that the fact that Cassel or his attorneys may have discussed a specific dollar amount for settlement with the other party, its attorneys, or the mediator would not be sufficient to render a statement solely between Cassel and his attorneys about a specific dollar amount inadmissible.
The foregoing discussion points out some similarities between the lawyer-client communications at issue here and the indicators in the Wimsatt case that the telephone conversation between the opposing attorneys was not protected by mediation confidentiality. There is a key factual distinction that renders the communications in the instant case even farther removed from being protected by mediation confidentiality than the Wimsatt conversation. In the instant case, the communications were not made by the client or his attorneys to another party (or its attorney) which was a participant in the mediation or to the mediator. That is, as we previously concluded, they were not communications between "disputants" and the "mediator," as required to come within the definition of a "mediation" or "mediation consultation" and, therefore, to qualify for protection under mediation confidentiality. (§§ 1115, 1119.)
The parties have cited no California case which addresses the factual circumstances in the instant case, i.e., communications made solely between a client and his attorneys outside the presence of an opposing party, or its attorney, or the mediator, and containing no information of anything said or done or any admission by a party made in the course of the mediation. We *163 know of none.[11] The mediation cases cited by Wasserman Comden are factually distinguishable, in that they involved communications between a party or its attorney to another party to the mediation about the mediated dispute or a communication to or by the mediator about the mediation.
(5) Perhaps most importantly, Wasserman Comden and Cassel are not within the class of persons which mediation confidentiality was intended to protect from each otherthe "disputants," i.e., the litigantsin order to encourage candor in the mediation process. (Rojas v. Superior Court, supra, 33 Cal.4th at pp. 415-416; accord, Foxgate Homeowners' Assn. v. Bramalea California, Inc., supra, 26 Cal.4th at p. 14.) There is no indication of any legislative intent that the mediation confidentiality statutes were to protect a lawyer from his client where only the client was a disputant in a mediation. As previously discussed, in the mediation confidentiality statutes, "the party" refers to the litigant who is one of the disputants in a mediation. (See Code Civ. Proc., § 1775.1; see also § 1115.) A party's attorney is a component of, "the party" to the mediation, rather than a freestanding, independent entity. (See Code Civ. Proc., § 1775.1.)
(6) Wasserman Comden also asserts that the trial court properly applied section 1128 to exclude the communications. Pursuant to section 1128, "[a]ny reference to a mediation during any other subsequent noncriminal proceeding is grounds for vacating or modifying the decision in that proceeding, in whole or in part, and granting a new or further hearing on all or part of the issues, if *164 the reference materially affected the substantial rights of the party requesting relief." As we previously concluded the meetings in which the communications occurred do not qualify as mediation meetings protected by mediation confidentiality. In addition, no reference need be made to a mediation with respect to the communications. In any event, section 1128 does not apply to any and all references to a mediation, but only a reference which "materially affected the substantial rights of the party requesting relief."
(7) With start of trial within two weeks, the meetings and accompanying communications between Cassel and Wasserman Comden were for trial strategy preparation, not just for mediation or creation of any documents or other communications such as mediation briefs or witness statements intended solely for use in the mediation. The proximity in time of the meetings and communications to any part of the mediation process is not determinative. (Wimsatt v. Superior Court, supra, 152 Cal.App.4th at p. 160.) The crux of the communications was that Cassel wanted his Wasserman Comden attorneys to honor his wishes, but they resisted to the extent, according to Cassel, that they breached their duties to him as his counsel. Neither Cassel nor Wasserman Comden assert that the communications contained information which the opposing party (or its representatives) or the mediator provided during mediation or otherwise contained any information of anything said or done or any admission by a party made in the course of the mediation. For the foregoing reasons, we conclude that the communications solely between Cassel as a client and his lawyer, Wasserman Comden, do not constitute oral and written communications made "for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation" protected by section 1119, subdivisions (a) and (b) or communications by "participants" protected by section 1119, subdivision (c). Wasserman Comden failed to demonstrate a sufficiently close link between the communications and the mediation to require application of mediation confidentiality to the communications. (Wimsatt v. Superior Court, supra, 152 Cal.App.4th at p. 160.) For this reason, the evidence should not be excluded.

DISPOSITION
The petition for writ of mandate is granted. The trial court is directed to vacate its orders of April 1 and April 2, 2009, and to issue a new order denying Wasserman Comden's motion in limine to exclude evidence of Cassel's communications with his own attorneys and evidence of conduct by Cassel engaged in only in the presence of his own counsel, all of which *165 occurred outside the presence of any opposing party (or its authorized representatives) or any mediator (as defined in § 1115, subd. (b)) prior to and on the same days as the mediation of the Von Dutch lawsuit. The temporary stay order is hereby terminated. Cassel shall recover his costs of this proceeding.
Zelon, J., concurred.
PERLUSS, P. J., Dissenting.
I respectfully dissent.
Evidence Code section 1119, subdivision (a),[1] provides, "No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any . . . civil action . . . ."[2] Nonetheless, the majority holds statements between a client and his or her lawyer made expressly and solely for the purpose of mediation (for example, discussions in a private strategy session immediately before or during mediation proceedings) would not be protected from compelled disclosure unless they were also communicated to, or made in the presence of, an opposing party or its attorney or the mediator.[3] That *166 conclusion, in my view, is not only at odds with the clear language of section 1119, subdivision (a), but also inconsistent with the Supreme Court's repeated disapproval of "judicially crafted exception[s]" to the mediation confidentiality statutes. (Foxgate Homeowners' Assn. v. Bramalea California, Inc. (2001) 26 Cal.4th 1, 14 [108 Cal.Rptr.2d 642, 25 P.3d 1117] (Foxgate); see Rojas v. Superior Court (2004) 33 Cal.4th 407, 424 [15 Cal.Rptr.3d 643, 93 P.3d 260]; see also Fair v. Bakhtiari (2006) 40 Cal.4th 189, 194 [51 Cal.Rptr.3d 871, 147 P.3d 653].) The majority's narrow interpretation of section 1119, subdivision (a), is based in large part on section 1115, subdivision (a)'s definition of "mediation" as a process in which a neutral person, the mediator, "facilitate[s] communication between the disputants to assist them in reaching a mutually acceptable agreement." Cassel was the "disputant" in the mediation in the underlying litigation; his counsel at Wasserman, Comden, Casselman & Pearson, L.L.P., was not a separate party or disputant, but operated together with Cassel as a single party. Thus, private communications between Cassel and his lawyer were not "between the disputants" or between a disputant and the mediator. To that point, I have no disagreement with the majority's analysis. And if mediation confidentiality pursuant to section 1119, subdivision (a), were limited to anything said or admissions made "in the course of a mediation, I might well agree with its conclusion. But section 1119, subdivision (a), applies equally to statements or admissions made "for the purpose of" a mediation. For that additional statutory language to have meaning, mediation confidentiality must cover statements that were not made "in the course of" the mediation proceeding itself. (See Metcalf v. County of San Joaquin (2008) 42 Cal.4th 1121, 1135 [72 Cal.Rptr.3d 382, 176 P.3d 654] [courts should avoid construction of a statute that makes any word surplusage]; Cooley v. Superior Court (2002) 29 Cal.4th 228, 249 [127 Cal.Rptr.2d 177, 57 P.3d 654] [same].) That is, private, unilateral statements that are materially related to the mediation are inadmissible and protected from disclosure, even if they are not communicated to another party or the mediator and do not otherwise reveal anything said or done in the course of the mediation itself. The majority's more restricted interpretation of section 1119, subdivision (a), improperly ignores this statutory language.
A broader interpretation of section 1119, subdivision (a), than the majority's is also mandated by section 1122, subdivision (a), which specifies certain circumstances in which a communication or a writing, otherwise protected by mediation confidentiality, may be disclosed or admitted into evidence in a subsequent civil action. Pursuant to this provision, if all persons who conduct *167 or otherwise participate in the mediation expressly agree to disclosure, the communication or writing is admissible. (§ 1122, subd. (a)(1).) Even absent the express agreement of all parties to the mediation, if the communication or writing "was prepared by or on behalf of fewer than all the mediation participants," the communication or writing is admissible if "those participants expressly agree . . . to its disclosure, and the communication, document, or writing does not disclose anything said or done or any admission made in the course of the mediation." (§ 1122, subd. (a)(2).) As explained in the Law Revision Commission comments to this provision, "Subdivision (a)(2) facilitates admissibility and disclosure of unilaterally prepared materials, but it only applies so long as those materials may be produced in a manner revealing nothing about the mediation discussion." (Cal. Law Revision Com. com., reprinted at 29B pt. 3B West's Ann. Evid. Code (2009 ed.) foll. § 1122, p. 409.)
What mediation-related communications or writings are prepared by fewer than all mediation participants and reveal nothing about mediation discussions? While this category might include something more than the type of communications between a party and his or her lawyer at issue in this writ proceeding (for example, planning discussions between two codefendants relating to the mediation), plainly section 1122, subdivision (a)(2), contemplates the application of mediation confidentiality (absent express agreement to the contrary) to private statements made for the purpose of mediation that are not communicated to the opposing party or the mediator. If the majority's interpretation of the scope of section 1119, subdivision (a), were correct, section 1122, subdivision (a)(2), would be unnecessary.
In the end, the majority's analysis of section 1119, subdivision (a), seems to be founded primarily on its concern that protecting private communications between a client and his or her lawyer under the rubric of mediation confidentiality may shield unscrupulous lawyers from well-founded malpractice actions without furthering the fundamental policies favoring mediation. That may well be true; but, respectfully, it is not our role to make that determination. Rather, it is for the Legislature to balance competing public policies and to create an exception to the statutory scheme governing mediation confidentiality where it finds it appropriate to do so. (See Foxgate, supra, 26 Cal.4th at p. 17 [Supreme Court deferred to Legislature to balance competing public policies even though recognizing confidentiality in case *168 before it left unpunished sanctionable conduct and, in effect, undermined the entire purpose of mediation]; Wimsatt v. Superior Court, supra, 152 Cal.App.4th at pp. 152-153, 155 [Supreme Court and Courts of Appeal have resisted attempts to narrow the scope of mediation confidentiality "even in situations where justice seems to call for a different result"].)
I would deny the petition for writ of mandate.
NOTES
[1] The action is a federal trademark and copyright lawsuit, Von Dutch Originals, LLC v. Cassel, case No. CV 04-0255 CAS (CTX).
[2] All further statutory references are to the Evidence Code unless otherwise identified.
[3] As to the conversations at issue, the court stated that "[t]he communications that occurred on August 3rd in the meeting that in any way addressed[] the mediation[] are going to be subject to the confidentiality, as is what the communications were during the mediation and leading to the premeeting and meetingsperiodic meetings during the day when the mediation was actually not in progress are going to be subject to the privilege." Regarding the conduct at issue, the court orally ruled that if Cassel's proffered testimony would be "that in effect his attorneys were looming over him or around him in such a manner that by their proximity, their demeanor, and their manner that they were intimidating him to force him to sign [the settlement agreement], my ruling is that is a communication and that is subject to the [mediation confidentiality] [¶] . . . [¶] . . . exclusion." The court also ruled that the conduct of one of the attorneys in accompanying Cassel to the restroom during the attorney-client meetings was also communication protected by mediation confidentiality.
[4] Cassel also requested that we issue an immediate temporary stay order in order to permit review and a final order on the petition prior to further proceedings in the trial court. We issued such an order on April 9, 2009.
[5] In pertinent part, section 954 provides: "Subject to Section 912 and except as otherwise provided in this article, the client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer if the privilege is claimed by: [¶] (a) The holder of the privilege; [¶] (b) A person who is authorized to claim the privilege by the holder of the privilege; or [¶] (c) The person who was the lawyer at the time of the confidential communication, but such person may not claim the privilege if there is no holder of the privilege in existence or if he is otherwise instructed by a person authorized to permit disclosure."
[6] Section 958 provides: "There is no privilege under this article as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship."
[7] Although some courts have chosen to refer to mediation confidentiality as the "mediation privilege," courts have also recognized that mediation confidentiality does not create a privilege, but rather operates as an extrinsic confidentiality protection. (See Wimsatt v. Superior Court (2007) 152 Cal.App.4th 137, 150, fn. 4 [61 Cal.Rptr.3d 200]; In re Marriage of Kieturakis (2006) 138 Cal.App.4th 56, 61-62 & fn. 2 [41 Cal.Rptr.3d 119].)
[8] Such recognition is similarly indicated, albeit more indirectly, by section 1116, subdivision (b), which states: "Nothing in this chapter makes admissible evidence that is inadmissible under Section 1152 or any other statute."
[9] Section 1119 reads in full as follows: "Except as otherwise provided in this chapter: [¶] (a) No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given. [¶] (b) No writing, as defined in Section 250, that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given. [¶] (c) All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential."
[10] Section 1115 reads in full as follows: "For purposes of this chapter: [¶] (a) `Mediation' means a process in which a neutral person or persons facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement. [¶] (b) `Mediator' means a neutral person who conducts a mediation. `Mediator' includes any person designated by a mediator either to assist in the mediation or to communicate with the participants in preparation for a mediation. [¶] (c) `Mediation consultation' means a communication between a person and a mediator for the purpose of initiating, considering, or reconvening a mediation or retaining the mediator."
[11] We note that in section 1122, the mediation confidentiality statutes recognize that there may be circumstances in which a writing or other communication is unilaterally generated by a mediation disputant, but comes within the purview of mediation confidentiality. Presumably such generation process could involve communications solely between the disputant and his attorneys. Section 1122, subdivision (a)(2), however, operates as a limit on the scope of section 1119. It allows a party to consent to the disclosure of a communication, document, or writing that the party unilaterally prepared solely for itself "for the purpose of, or in the course of, or pursuant to, a mediation or a mediation consultation" if the "communication, document, or writing does not disclose anything said or done or any admission made in the course of the mediation." (§ 1122, subd. (a)(2); see Rojas v. Superior Court, supra, 33 Cal.4th at pp. 418-421.) The legislative intent is to facilitate "`admissibility and disclosure of unilaterally prepared materials, but it only applies so long as those materials may be produced in a manner revealing nothing about the mediation discussion.'" (Rojas, supra, at p. 421.)

Applying section 1122, subdivision (a)(2), to the facts in the instant case, the communications between Cassel and his attorneys would not be protected from disclosure under section 1119 even if, arguably, they were "made or prepared for the purpose of, or in the course of, or pursuant to, a mediation or a mediation consultation." The communications were unilaterally generated by Cassel, either directly or through his attorneys as his agents. They did not disclose anything said or done or any admission made in the course of the mediation, and Cassel clearly has consented to their disclosure.
[1] Statutory references are to the Evidence Code.
[2] Section 1119, subdivision (b), in language substantially the same as section 1119, subdivision (a), provides no writing "prepared for the purpose of, in the course of, or pursuant to, a mediation" is admissible or subject to discovery or compelled disclosure.
[3] Whether a particular statement or writing exchanged between a client and his or her lawyer is materially related to the mediation is a separate and different question from whether mediation confidentiality is available at all for this category of communications. The proper reach of mediation confidentiality pursuant to section 1119 presents a question of law subject to independent review by this court (see In re Tobacco II Cases (2009) 46 Cal.4th 298, 311 [93 Cal.Rptr.3d 559, 207 P.3d 20] [the meaning of statutory language presents a question of law that we review de novo]) and is the only issue addressed by the majority in granting petitioner Michael Cassel's request for relief. Whether the trial court erred in concluding a particular statement is sufficiently connected to a mediation to be protected from disclosure, however, is an evidentiary ruling subject to abuse-of-discretion review. (See Wimsatt v. Superior Court (2007) 152 Cal.App.4th 137, 160 [61 Cal.Rptr.3d 200] ["[m]ediation confidentiality protects communications and writings if they are materially related to, and foster, the mediation"]; see generally Zhou v. Unisource Worldwide (2007) 157 Cal.App.4th 1471, 1476 [69 Cal.Rptr.3d 273] [trial court's ruling on the admissibility of evidence generally reviewed for abuse of discretion].) Cassel does not argue in his petition that the trial court abused its discretion in concluding, after carefully reviewing each of the statements at issue here, that they were materially related to the mediation in the underlying, Von Dutch lawsuit, and that issue is not properly before us. (Cf. Tiernan v. Trustees of Cal. State University & Colleges (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317] [argument asserted in the trial court but not raised on appeal is forfeited]; Boucher v. Alliance Title Co., Inc. (2005) 127 Cal.App.4th 262, 267 [25 Cal.Rptr.3d 440] [same].)