Filed 1/27/16  Progressive Casualty Ins. Co. v. Noland CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PROGRESSIVE CASUALTY INSURANCE COMPANY, INC.<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOHN W. NOLAND et al.,<br><br>Defendants and Appellants. | B253986<br><br>(Los Angeles County<br>Super. Ct. No. BC487064) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary Strobel, Judge.  Affirmed.

Yocis & Cox, and James M. Cox for Plaintiff and Respondent.

Law Offices of John W. Noland, and John W. Noland; Esner, Chang & Boyer, Stuart B. Esner and Andrew N. Chang for Defendants and Appellants.

Defendants and appellants John W. Noland and Law Office of John W. Noland (Noland) appeal a judgment following a grant of a motion for summary adjudication in favor of plaintiff and respondent Progressive Casualty Insurance Company (Progressive).

Progressive sued Noland for indemnification of a hospital lien arising out of medical treatment Noland's client received in Arizona. Progressive thereafter moved for summary adjudication, citing the language of the settlement agreement in the underlying personal injury action brought by Noland's client against Progressive's insured, which specified that Noland and his client would be responsible for "all liens" and would indemnify Progressive and hold it harmless in the event any liens were asserted.

In opposition, Noland asserted that the language in the settlement agreement stating he and his client would indemnify Progressive for "all liens" was the product of a drafting error and that the settlement agreement should have specified Noland and his client would indemnify Progressive and hold it harmless for "all California liens."

Due to the mediation confidentiality provision of Evidence Code section 1119, the trial court properly determined that Noland cannot offer admissible evidence to support his claim of unilateral mistake.[1] Therefore, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The accident and underlying personal injury action.*

Ramon Reina-Juarez (Juarez) was a passenger in a vehicle driven by Jong Hyuk-Choi (Choi) when he sustained serious injuries in an accident that occurred in Arizona in July 2006. Following the accident, Juarez received emergency medical treatment at St. Joseph's Hospital and Medical Center (St. Joseph's) in Arizona. Juarez incurred hospital charges totaling $54,658. St. Joseph's recorded a health care provider lien in Arizona, with the Maricopa County Recorder's Office, to secure payment of the charges.

Juarez, represented by Noland, filed a personal injury action against Choi in the Orange County Superior Court. There was another passenger injured in the accident,

---

[1] All further statutory references are to the Evidence Code, unless otherwise specified.

Manual Carbajal-Rodriguez (Rodriguez). Rodriguez sued Choi in the same action and he was represented by other counsel, namely, Roy Huntsman and Law Office of Roy Huntsman (Huntsman). Choi was insured by Progressive, which defended him in the lawsuit.

On September 8, 2009, a mediation was held in connection with the personal injury lawsuit. At the mediation, Choi reached separate but substantially similar settlements with Juarez and Rodriguez. Juarez and Rodriguez and their respective attorneys entered into two Stipulations for Settlement. Under the terms of the settlements, Progressive agreed to pay Juarez and Rodriguez the sums of $200,000 and $312,500, respectively.

The Stipulations for Settlement specified the plaintiffs and their counsel were responsible for "all liens" and that they would indemnify Progressive and hold it harmless in the event any liens were asserted. As relevant here, the Juarez settlement stated that Juarez and/or "his attorney [Noland] shall be responsible for *all liens*, including medical liens, [and] each shall indemnify [and] hold harmless [Choi] and [Progressive] in the event said liens are asserted." (Italics added.)

Progressive then issued the settlement payments to Juarez and Rodriguez.

2. *St. Joseph's action against Progressive to enforce the health care provider lien.*

On March 8, 2010, St. Joseph's sued Progressive to enforce its $54,658 medical lien relating to the treatment and care of Juarez following the July 2006 accident. Progressive tendered the defense of St. Joseph's lawsuit to Noland, who declined the tender.

Progressive then retained counsel to defend it in the St. Joseph's lawsuit. St. Joseph's successfully moved for summary judgment and was awarded the full amount of its medical lien, as well as prejudgment and postjudgment interest. Progressive and St. Joseph's subsequently entered into a settlement, with St. Joseph's accepting $27,804.63 to settle the Juarez lien.

3

3. *The instant action by Progressive against Noland, seeking to recover the amount Progressive paid to St. Joseph's to settle the Juarez lien.*

        a. *Pleadings.*

On June 25, 2012, Progressive filed the instant action against Noland and Huntsman, alleging causes of action for breach of contract and fraud. The gravamen of the action was Progressive's claim that under the terms of the settlements entered into in the personal injury action, it was entitled to recover from Noland and Huntsman the sums paid to St. Joseph's to settle the Juarez and Rodriguez liens.

Noland filed a cross-complaint against Progressive.

        b. *Progressive's motion for summary adjudication.*

Progressive filed a motion for summary adjudication. As to Noland, Progressive raised the following issues of duty: Noland had a duty to defend Progressive in the St. Joseph's lawsuit, and Noland had a duty to indemnify Progressive for its payment of $27,804.63 to settle St. Joseph's claim relating to the Juarez medical lien.

Progressive argued that under the terms of the Stipulation for Settlement, Noland agreed to indemnify and hold Progressive harmless for medical lien claims. Progressive duly tendered the St. Joseph's lien claim to Noland, but he refused the tender and failed to defend, indemnify or hold Progressive harmless for the lien claim.

        c. *Noland's opposition to the summary adjudication motion.*

In opposition, Noland argued, inter alia, that the "all liens" language in the Stipulation for Settlement was the product of unilateral mistake by him and Huntsman, and that Progressive had unclean hands in the manner in which it drafted the settlement. By way of additional material facts, Noland enumerated the following: At the time of the settlement, it was clear that he and Huntsman did not consider the Arizona bills to be part of the settlement, and it was clear that he and Huntsman would have opposed any attempt to include the Arizona bills as liens covered by the settlement. Further, "[a]t the September 8, 2009 mediation, [Huntsman] accepted Progressive's initial offer for economic damages, *which included just the California bills*," (italics added), and "at the September 8, 2009 mediation, before signing the Stipulation, Huntsman told

4

Progressive's representatives that Rodriguez was not receiving any money for the Arizona medical bills, and did not intend to pay any of those bills, as the Arizona medical bills were not Rodriguez's liens." On the basis of these facts, Noland asserted that he and Huntsman made it clear to Progressive that they would not agree to pay the Arizona liens as part of the settlement.

> d. *Trial court's ruling granting summary adjudication.*

After taking the matter under submission, the trial court issued a written ruling which provided in relevant part:

"Defendants argue for an alternate or more limited interpretation of the language 'all liens, including medical liens' which appears in both of the Stipulations for Settlement. However, the record does not support a finding that the language is ambiguous. Further, the only evidence Defendants offer for a more limited interpretation than what is actually written is parol evidence – i.e., comments made by Huntsman at the time the Stipulations were being prepared and executed that his client, Rodriguez, was not receiving any money for the Arizona medical bills, and he did not intend to pay any of those bills, as the Arizona medical bills were not Rodriguez's liens. . . . . The evidence is excluded as parol and is inadmissible pursuant to the mediation privilege (Evid. Code Section 1119).

"Even if the conversations were admissible, the language regarding liens was not modified or qualified in any way to reflect the understandings of Defendants that Arizona liens were excluded, and the Stipulations were executed with the language 'all liens, including medical liens' intact."

With respect to the argument that Progressive had unclean hands by laying a "trap" in the Stipulations for Settlement, the trial court found "[t]his argument is based, in part, on inadmissible evidence of the conversations which occurred at the mediation and on speculation as to Progressive's motives."

The trial court also rejected the defense claim that unilateral mistake was a basis for rescission. "Here, the comments made by Defendant Huntsman during preparation and execution of the Stipulations are inadmissible and may not be used to show

[Progressive] was aware of Defendants' mistake regarding the Arizona liens, either a mistake of fact or of law. Defendants must provide evidence that they do not 'bear the risk of the mistake.' Here, the evidence submitted shows that the agreement was signed by two attorneys on admittedly false legal or factual assumptions. As lawyers they have not shown how they were precluded from investigating the law or facts before agreeing to the indemnity clause in question."

The trial court also observed that while Noland and Huntsman sought rescission for their alleged unilateral mistake, "with the settlement payments having been made and distributed to California lienholders as well as to Defendants' clients, it is unclear what relief from mistake would be available. Defendants have not presented evidence that they tendered back to Progressive the benefits received under the settlement agreement. Nor . . . have Defendants presented evidence that they moved promptly to rescind the contract once the purported grounds for rescission were known to them."

Accordingly, the trial court granted Progressive's motion for summary adjudication, finding that Noland and Huntsman both had a duty to defend and to indemnify Progressive.

### e. *Judgment and appeal.*

At the time the trial court granted summary adjudication in favor of Progressive, a judgment could not be entered because Progressive's claim for reimbursement of defense fees and costs incurred in the defense of the action brought by St. Joseph's was still pending. Thereafter, Progressive withdrew its claim for reimbursement of defense fees and costs incurred in the St. Joseph's action. The trial court then entered judgment in favor of Progressive on both the complaint and the cross-complaint. The judgment directed Noland to pay Progressive the sum of $27,804.63 plus prejudgment interest of $8,272.83.[2]

Noland filed a timely notice of appeal from the judgment.

---

[2] Progressive also prevailed against Huntsman. However, Huntsman, who was Noland's co-appellant in this matter, dismissed his appeal on June 29, 2015, leaving Noland as the sole appellant.

6

## CONTENTIONS

In seeking reversal, Noland contends: unilateral mistake is a basis for disregarding erroneous parts of a writing and supplying terms to conform to the parties' true understanding; where the mistake is alleged in the pleadings, the parol evidence rule does not exclude evidence relevant to the issue; and the trial court erred in excluding extrinsic evidence of his mistake which Progressive knew or suspected.

## DISCUSSION

1. *Standard of appellate review.*

"We independently review an order granting summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) We determine whether the court's ruling was correct, not its reasons or rationale. (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376.) 'In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment.' (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.) We review for abuse of discretion any evidentiary ruling made in connection with the motion. [Citation.]" (*Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499, 504-505.)

2. *California law relating to mediation confidentiality.*

As explained in *Cassel v. Superior Court* (2011) 51 Cal.4th 113 (*Cassel*), "[s]ection 1119 governs the general admissibility of oral and written communications generated during the mediation process. Subdivision (a) provides in pertinent part that '[n]o evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation . . . is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any . . . civil action . . . .' . . . Subdivision (b) similarly bars discovery or admission in evidence of any 'writing . . . prepared for the purpose of, in the course of, or pursuant to, a mediation . . . .' Subdivision (c) of section 1119 further provides that '[a]ll communications, negotiations, or settlement discussions by and between participants in the course of a mediation . . . shall remain confidential.' . . . . Exceptions are made for oral or written settlement agreements

reached in mediation if the statutory requirements for disclosure are met.  (§§ 1118, 1123, 1124; see *Simmons* [*v. Ghaderi* (2008)] 44 Cal.4th 570, 579.)"  (*Cassel*, *supra*, 51 Cal.4th at pp. 123-124, original italics omitted.)

The purpose of these provisions is to encourage the mediation of disputes by eliminating a concern that things said or written in connection with such a proceeding will later be used against a participant, and toward that end, the statutory scheme unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception.  (*Cassel*, *supra*, 51 Cal.4th at p. 124.)  "Judicial construction, and judicially crafted exceptions, are permitted only where due process is implicated, or where literal construction would produce absurd results, thus clearly violating the Legislature's presumed intent.  Otherwise, the mediation confidentiality statutes must be applied in strict accordance with their plain terms.  Where competing policy concerns are present, it is for the Legislature to resolve them.  [Citations]"  (*Ibid*.)

By way of example, *Cassel* cited this court's decision in *Wimsatt v. Superior Court* (2007) 152 Cal.App.4th 137 (*Wimsatt*).  "There, the court held that mediation briefs and attorney e-mails written and sent in connection with the mediation were protected from disclosure by the mediation confidentiality statutes, even when one of the mediation disputants sought these materials in support of his legal malpractice action against his own attorneys.  Confirming that there is no 'attorney malpractice' exception to mediation confidentiality, the *Wimsatt* court explained:  'Our Supreme Court has clearly and [unequivocally] stated that we may not craft exceptions to mediation confidentiality.  [Citation.]  The Court has also stated that if an exception is to be made for legal misconduct, it is for the Legislature to do, and not the courts.  [Citation.]'  (*Wimsatt*, *supra*, 152 Cal.App.4th 137, 163.)"  (*Cassel*, *supra*, 51 Cal.App.4th at p. 133.)

3. *No error in exclusion of Noland's proffered evidence to support his claim of unilateral mistake*.

a. *Noland's reliance on Florida case law is misplaced*.

Noland's opening brief on appeal lacks any discussion of California statutory or case law pertaining to mediation confidentiality. The opening brief mentions section 1119 only once, in its summary of the trial court's ruling.

In this regard, the opening brief states: "The trial court -- in the context of analyzing whether the language in the stipulation for settlement was ambiguous -- ruled that extrinsic evidence was barred by the parol evidence rule and the mediation privilege (Evid. Code 1119). Although the mediation privilege prohibits the introduction of mediation conversations and documents, this privilege does not trump the settled rule that extrinsic evidence is admissible to show unilateral mistake known to the other party, and neither Progressive nor the trial court set forth any authority for such a proposition. (Cf. *DR Lakes, Inc. v. Brandsmart U.S.A.* (Fla. Dist. Ct. App. 2002) 819 So. 2d 971, 974 [Florida's mediation privilege inapplicable to a claim of mistake; . . .] As the Florida Court of Appeal held in *DR Lakes*: 'The reason for confidentiality as to statements made during mediation where a settlement agreement is not reached is obvious. Mediation could not take place if litigants had to worry about admissions against interest being offered into evidence at trial, if a settlement was not reached. Once the parties in mediation have signed an agreement, however, the reasons for confidentiality are not as compelling. There is, of course, no confidentiality as to "an executed settlement agreement." ' (819 So.2d at 973-974.)"

Thus, according to Noland, the trial court erred in excluding parol or extrinsic evidence of his unilateral mistake and Progressive's knowledge thereof. However, Noland's reliance on a Florida appellate decision, rather than section 1119 as construed in *Cassel* and other California cases, is neither persuasive nor helpful.

9

b. *Section 1119 precludes admission of Noland's evidence of the mediation process leading up to the execution of the settlement agreement.*

The discrete issue presented is the impact of section 1119 on the evidence Noland proffered to support his claim of unilateral mistake and Progressive's knowledge thereof.

In resisting the motion for summary adjudication, Noland set forth the following allegedly material facts: "[a]t the time of settlement," it was clear that he and Huntsman did not consider the Arizona bills to be part of the settlement, and "[a]t the time of settlement" it was clear that he and Huntsman would have opposed any attempt to include the Arizona bills as liens covered by the settlement. Further, "[a]t the September 8, 2009 mediation, [Huntsman] accepted Progressive's initial offer for economic damages, *which included just the California bills*," (italics added), and "at the September 8, 2009 mediation, before signing the Stipulation, Huntsman told Progressive's representatives that Rodriguez was not receiving any money for the Arizona medical bills, and did not intend to pay any of those bills, as the Arizona medical bills were not Rodriguez's liens." In support, Noland's opposing separate statement cited the declarations of Noland and Huntsman, which asserted they made it clear to Progressive that they would not agree to pay the Arizona liens as part of the settlement.

Insofar as Noland proffered evidence of communications, negotiations and settlement discussions which occurred during the mediation process, the trial court properly found that section 1119 renders the evidence inadmissible. Therefore, Noland lacked admissible evidence to support his theory that the settlement agreement mistakenly provided that he would indemnify Progressive for "all liens" rather than for "all California liens," and that Progressive was aware of his unilateral mistake. Accordingly, Noland failed to raise a triable issue with respect to his duty to indemnify Progressive for "all liens, including medical liens," as specified in the Stipulation for Settlement in the underlying personal injury action.[3]

---

[3] At oral argument on appeal, Noland asserted that even assuming statements made *during* mediation are inadmissible, section 1119 does not preclude the admission of evidence relating to *pre-mediation* and *post-mediation* communications to show that

10

## DISPOSITION

The judgment is affirmed. Progressive shall recover its costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, P. J.

We concur:

ALDRICH, J.

YEGAN, J.[*]

---

Noland did not agree to indemnify Progressive for Arizona liens. This argument is unavailing. Any statements made *prior to* mediation were superseded by the actual mediation; the mediation culminated in the Stipulation for Settlement which provided that Noland would indemnify Progressive for "all liens." Further, any *after the fact* statements that Noland would not indemnify Progressive for Arizona liens cannot alter the language of the Stipulation for Settlement or vest the stipulation with a meaning which it clearly lacks.

[*]  Associate Justice of the Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.